## UNITED STATES *v.* UNZEUTA.

No. 509. Argued March 12, 1930.—Decided April 14, 1930.

*Assistant Attorney General Richardson,* with whom *Attorney General Mitchell, Assistant Attorney General Luhring,* and *Messrs. Claude R. Branch,* Special Assistant to the Attorney General, and *W. H. Ramsey* were on the brief, for the United States.

*Mr. Allen G. Fisher* submitted for appellee.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The respondent was indicted for murder alleged to have been committed on a freight car on the right of way of the Chicago & Northwestern Railway Company on the Fort Robinson Military Reservation in Nebraska. He filed a plea to the jurisdiction of the United States upon

the ground that the right of way was within the jurisdiction of the State of Nebraska. The District Court sustained the plea (35 F. (2d) 750) and the Government brings the case here under the Criminal Appeals Act (34 Stat. 1246, U. S. C., Tit. 18, sec. 682).

When Nebraska was admitted to the Union, the United States retained all right and title to the unappropriated public lands lying within the territory of Nebraska. Act of April 19, 1864, c. 59, sec. 4, 13 Stat, 47, 48; Act of February 9, 1867, c. 36, sec. 2, 14 Stat. 391, 392. By Executive Order of November 14, 1876, a portion of these lands was reserved for the Fort Robinson Military Reservation. In 1885, Congress granted the right of way in question to the Fremont, Elk Horn & Missouri Valley Railroad Company, a Nebraska corporation, " across and through the Fort Robinson Military Reservation, located in said State of Nebraska, not to interfere with any buildings or improvements thereon, and the location thereof to be subject to the approval of the Secretary of War." Act of January 20, 1885, c. 26, 23 Stat. 284. In 1887, Nebraska ceded to the United States " the jurisdiction of the State of Nebraska in and over the military reservations known as Fort Niobrara and Fort Robinson " on the following conditions (Laws of Nebraska, 1887, p. 628):

*"Provided,* That the jurisdiction hereby ceded shall continue no longer than the United States shall own and occupy said military reservations.

" Sec. 2. The said jurisdiction is ceded upon the express condition that the State of Nebraska shall retain concurrent jurisdiction with the United States in and over the said military reservations so far as that all civil process in all cases, and such criminal or other process may issue under the laws or authority of the state of Nebraska against any person or persons charged with crime or misdemeanors committed within said state, may be executed therein in the same way and manner as if such jurisdiction

had not been ceded except so far as such process may affect the real and personal property of the United States;

"*Provided,* That nothing in the foregoing act shall be construed so as to prevent the opening and keeping in repair public roads and highways across and over said reservations."

When the United States acquires title to lands, which are purchased by the consent of the legislature of the State within which they are situated " for the erection of forts, magazines, arsenals, dockyards and other needful buildings," (Const. Art. I, sec. 8) the Federal jurisdiction is exclusive of all State authority. With reference to land otherwise acquired, this Court said in *Fort Leavenworth Railroad Company* v. *Lowe,* 114 U. S. 525, 539, 541, that a different rule applies, that is, that the land and the buildings erected thereon for the uses of the national government will be free from any such interference and jurisdiction of the State as would impair their effective use for the purposes for which the property was acquired. When, in such cases, a State cedes jurisdiction to the United States, the State may impose conditions which are not inconsistent with the carrying out of the purpose of the acquisition. *Fort Leavenworth Railroad Company* v. *Lowe, supra; Chicago, Rock Island & Pacific Railway Company* v. *McGlinn,* 114 U. S. 542; *Benson* v. *United States,* 146 U. S. 325, 330; *Palmer* v. *Barrett,* 162 U. S. 399, 403; *Arlington Hotel Company* v. *Fant,* 278 U. S. 439, 451. The terms of the cession, to the extent that they may lawfully be prescribed, determine the extent of the Federal jurisdiction.

In the present instance, there is no question of the status of the Fort Robinson Military Reservation. Nebraska ceded to the United States its entire jurisdiction over the reservation save in the matter of executing process and opening and repairing roads or highways. It was in this view that the Federal Circuit Court decided

that, after this jurisdiction had been accepted by the United States, it could not be recaptured by the action of the State alone, and hence that an act of the legislature of Nebraska, passed in 1889, seeking to amend the act of cession was not effective, and that the statutes of the State regulating the sale of liquors were not in force within the ceded territory. *In re Ladd,* 74 Fed. 31. The conditions of the cession relating to the execution of criminal process were construed as intended to save the right to execute process within the reservation for crimes committed outside, that is, to prevent the reservation from being a sanctuary for fugitive offenders.

Accepting this construction of the conditions attached to the cession, we come to the question whether the jurisdiction over the reservation covered the right of way which Congress had granted to the railroad company. There was no express exception of jurisdiction over this right of way, and it can not be said that there was any necessary implication creating such an exception. The proviso that the jurisdiction ceded should continue no longer than the United States shall own and occupy the reservation had reference to the future and cannot be regarded as limiting the cession of the entire reservation as it was known and described. As the right of way to be located with the approval of the Secretary of War ran across the reservation, it would appear to be impracticable for the State to attempt to police it, and the Federal jurisdiction may be considered to be essential to the appropriate enjoyment of the reservation for the purposes to which it was devoted. There is no adequate ground for cutting down the grant by construction.

In 1911, a controversy arose with respect to fencing the right of way. The Secretary of War forbade the fencing and, in his communication to the railway company, said: " The State, by Act of March 29, 1887, ceded exclusive jurisdiction over this reservation, subject to the

usual reservations for service of process, and no statute of the State requiring railways to fence their rights of way can be regarded as operative within the reservation of Fort Robinson. Your right of way across the reservation divides it into two nearly equal parts. To place fences thereon would very greatly restrict the use of the reservation for drill and maneuver purposes, and, even though you should put in numerous passage-ways, would cause great inconvenience to the troops there stationed. . . . By reason of the foregoing considerations, I am constrained to inform you that the Government will not permit the erection of fences along the right of way of your company within the Fort Robinson military reservation, and you are hereby notified to remove all such fences heretofore erected by your company." The Supreme Court of Nebraska in the case of *Anderson* v. *Chicago & Northwestern Railway Company,* 102 Neb. 578, held that this refusal of the Secretary of War to permit the erection of fences along the right of way constituted a defense to an action against the railway company for the killing of cattle, although a statute of the State, if it had governed the case, would have made the company liable because of the failure to enclose its tracks.

The mere fact that the portion of the reservation in question is actually used as a railroad right of way is not controlling on the question of jurisdiction. Rights of way for various purposes, such as for railroads, ditches, pipe lines, telegraph and telephone lines across Federal reservations, may be entirely compatible with exclusive jurisdiction ceded to the United States. In *Benson* v. *United States, supra,* the jurisdiction of the Federal court was sustained with respect to an indictment for murder committed on a portion of the Fort Leavenworth Military Reservation in Kansas which was used for farming purposes. In *Arlington Hotel Company* v. *Fant, supra,* the

jurisdiction of the United States was upheld as to the portion of the reservation there in question which had been leased for use as a hotel. While the grant of the right of way to the railroad company contemplated a permanent use, this does not alter the fact that the maintenance of the jurisdiction of the United States over the right of way, as being within the reservation, might be necessary in order to secure the benefits intended to be derived from the reservation.

We do not consider the decisions cited by the District Court as requiring a different view. In the case of *Utah & Northern Railway* v. *Fisher*, 116 U. S. 28, there was involved the right of the Territory of Idaho to tax the land and other property of the railroad which the company contended were within an Indian reservation and therefore not taxable. The company argued that the Indian reservation was excluded from the limits of the Territory by the Act of Congress creating the Territory and also by a treaty with the Indians. The Court held that neither position could be sustained. It appeared that no treaty with the Indians was in existence at the time Congress created the Territory. The subsequent treaty did not require that the reservation should be excluded from the jurisdiction of the Territory when the exercise of that jurisdiction would not defeat the stipulations of the treaty for the protection of the Indians, and the Court found that the just rights of the Indians would not be impaired by the taxation of the railroad property. It also appeared that the Indians for a pecuniary consideration had ceded to the United States their title to so much of the reservation as might be needed for the uses of the railroad and that this strip of land was relinquished by Congress to the company. The Court decided that in these circumstances and by force of the cession the land was withdrawn from the reservation. In *Clairmont* v. *United States*, 225 U. S. 551, the Court held that one who

had liquor in his possession on a railroad train running on a right of way through the Flathead Indian Reservation in Montana was not guilty of the offense of introducing. liquor into the "Indian country." By agreement between the Indians and the United States, the Indians had surrendered all their "right, title and interest," the land had been freed from the Indian right of occupancy, and the Indian title had thus been entirely extinguished. The land could not be considered "Indian country."

We conclude that the District Court erred in sustaining the plea.

*Judgment reversed.*