[S. F. No. 16733. In Bank. June 16, 1942.]

DOROTHY JOHNSON, Petitioner, v. LEWIS MORRILL, as County Clerk, etc., Respondent.

[S. F. No. 16734. In Bank. June 16, 1942.]

IRVING COHEN, Petitioner, v. LEWIS MORRILL, as County Clerk, etc., Respondent.

[S. F. No. 16735. In Bank. June 16, 1942.]

FREDA ALLEN, Petitioner, v. LEWIS MORRILL, as County Clerk, etc., Respondent.

[S. F. No. 16736. In Bank. June 16, 1942.]

MIYO ZULIM, Petitioner, v. LEWIS MORRILL, as County Clerk, etc., Respondent.

C. A. Linn and Ernest C. Crowley for Petitioners.

Earl Warren, Attorney General, Robert W. Harrison, Chief Assistant Attorney General, and P. B. Lynch, District Attorney (Solano), for Respondent.

SHENK, J.—The petitioners, Johnson, Cohen, Allen and Zulim, separately seek the writ of mandamus to compel the respondent, Morrill, as County Clerk of the County of Solano, to accept for filing and registration the affidavits of their qualifications as electors residing in that county. The matters are submitted on the petitions, the answers thereto, and a stipulation of the facts.

The petitioners are employed in national defense activities at Mare Island Navy Yard near the city of Vallejo, Solano County, and reside on various defense housing projects constructed outside the confines of the Navy Yard and in said county. The petitions and the answers thereto were consolidated for argument and decision. They present the question whether the United States has acquired exclusive jurisdiction of the areas occupied by said defense housing projects, and on which the petitioners reside, so as to preclude the exercise by the petitioners of the right of suffrage in said county and the State of California.

The defense housing program was projected pursuant to laws passed by the Congress following the declaration by the President on September 8, 1939, that a national emergency was created by the outbreak of the second World War in 1939 after the Munich incident, and more immediately by German bombings of neutral ships in the free lanes of the Atlantic Ocean. After the attack on Pearl Harbor at Honolulu, on the islands of Midway, Wake and Guam, and on Manila by the Japanese in December, 1941, and on April 1, 1942, 33,219 units of housing to accommodate defense workers and others had been constructed or projected within the State of California. Seven projects, including 995 housing units, are constructed or are to be constructed on military and naval reservations or bases. Unquestionably they would be subject to the exclusive jurisdiction of the United States. (*Standard Oil Co.* v. *California*, 291 U. S. 242 [54 S. Ct. 381, 78 L. Ed. 775].)

The remaining projects occupy 63 separate tracts of land acquired by the United States through purchase or lease, and are located in or adjacent to 23 different cities or towns. About 10,870 units of housing are completed or in the course of construction in Solano County, 300 of which were constructed within the Navy Yard Reservation at Mare Island. Pursuant to the provisions of title II of Public Law No. 849, 76th Congress, as amended by Public Law No. 137, 77th Congress, the United States Government made grants of money and property, aggregating $20,707,839 as of March 21, 1942, to the State of California to enable it to furnish to the housing projects essential community services and facilities. The county of Solano received property of the total value of $5,828,167 for construction, equipment and maintenance of public schools, pumping and distribution of water, hospital buildings and equipment, sewage systems, fire protection, and playground and recreation centers.

The petitioner Irving Cohen resides in Dormitory A of Defense Housing Site 1-D of project "California 4087," situate about two miles east of the city of Vallejo. The land was leased to the United States of America by Carquinez Development Company on May 26, 1941. The leasing of the land and the financing of the project were authorized by the Urgent Deficiency Appropriation Act, approved March 1, 1941, Public Law No. 9, 77th Congress, 55 Stats. 14.

The petitioner Freda Allen resides at 34 Rodgers Street in the city of Vallejo within defense housing projects officially designated as "California 4083-4," and known as Federal Terrace. The site is at the north end of Vallejo on the mainland adjacent to Napa Bay, and was acquired by the United States in fee by Declaration of Taking filed in a condemnation proceeding. The projects were authorized and financed pursuant to said Public Law No. 849, 76th Congress (54 Stats. 1125), also called the Lanham Act.

The petitioner Miyo Zulim resides at 205 Madison Street in the city of Vallejo within defense housing project "California 4086," also known as Carquinez Heights, at the southerly end of the city adjoining Mission Bay. The site was acquired by the United States in fee pursuant to Declaration of Taking filed in a condemnation proceeding, and was authorized and financed likewise pursuant to the Lanham Act.

The petitioner Dorothy Johnson resides at 234 Cunningham Street in the city of Vallejo within defense housing project

designated as "California 4082" and "Navy-2," known as Roosevelt Terrace. The site is located at the north end of Vallejo adjacent to Federal Terrace (California 4083-4), and was acquired by grant from Martin Aden and others. The land was leased to the Navy Department by the United States Housing Authority, and the project, consisting of 600 dwelling units, was constructed by the Navy Department, pursuant to title II, Public Law No. 671, 76th Congress, 54 Stats. 676.

None of the projects here involved has been expressly accepted for exclusive jurisdiction by the United States by the filing of any notice of acceptance of exclusive jurisdiction pursuant to the provisions of section 355 of the Revised Statutes, or by any other express acceptance. ▮ The immediate question for determination is whether the United States has acquired exclusive jurisdiction without such express acceptance, pursuant to the provisions of section 8, article I of the United States Constitution, and section 34 of the Political Code of this state.

Clause 17 of said section 8 provides that the Congress shall have power to exercise exclusive legislation over all places purchased by the consent of the Legislature of the state in which the same shall be, "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings."

Section 34 of the Political Code provides that the Legislature consents to the purchase or condemnation by the United States of any tract of land within the state "for the purpose of erecting forts, magazines, arsenals, dockyards, and other needful buildings," with certain reservations of authority to serve civil and criminal process and power to tax, not here material.

The exercise of exclusive legislation and of exclusive jurisdiction have been held to be synonymous, (*Surplus Trading Co.* v. *Cook,* 281 U. S. 647, 652 [50 S. Ct. 455, 74 L. Ed. 1091].) If the projects here involved may be included in any of the purposes designated in the Constitution and the Political Code section, namely, if they can be said to be forts, magazines, arsenals, dockyards, or other needful buildings, then they have been acquired by the United States with the consent of the Legislature within the meaning of said section 8 of the federal Constitution, and the United States has exclusive jurisdiction over the land so acquired. (*Surplus Trading Co.* v. *Cook, supra,* p. 652; *Standard Oil Co.* v. *California,* 291 U. S. 242 [54 S. Ct. 381, 78 L. Ed. 775] ; *Consolidated Milk Producers* v. *Parker,* 19 Cal. (2d) 815 [123 P. (2d)

440].) Obviously, houses built for defense workers, without more, are not forts, magazines, arsenals, or dockyards. Whether they are or were intended to be "other needful buildings" requires an examination of the laws under which the projects were authorized, and of the facts presented here.

Public Act 9, 77th Congress, approved March 1, 1941, was "an Act making additional appropriations for the fiscal year 1941 urgently required for the Work Projects Administration and certain other Federal agencies, and for other purposes." It provided for the appropriation of emergency funds to enable the President through government agencies to provide temporary shelter, including the acquisition of land or interests therein, in localities where by reason of national defense activities a shortage of housing existed, and when it was not practicable under other acts or private enterprise to meet the needs. There was no provision therein which indicated that the Congress intended that the United States would acquire exclusive jurisdiction in such areas. An indication to the contrary is found in the provision for assistance to state and local authorities in conducting and furnishing health and sanitary activities and other services therein. In any event the land on which project "California 4087" was financed and constructed pursuant to said act was acquired by lease from the Carquinez Development Company. The parties to the present proceedings are in agreement that exclusive jurisdiction over that land was not acquired by the United States Government because the land was not "purchased" as provided by said section 8 of the Constitution. Therefore the petitioner Cohen, who resides in that area, would be entitled to register as an elector residing in Solano County in accordance with his application.

The Lanham Act Public Law No. 849, 76th Congress, 54 Stats. 1125), approved October 14, 1940, was enacted "to expedite the provisions of housing in connection with national defense, and for other purposes." It authorized the Federal Works Administrator to provide housing for persons engaged in national defense activities and their families in the areas in which the President should find that an acute shortage of housing exists or is impending and for that purpose to acquire, prior to the approval of title by the attorney general, land by purchase, lease or condemnation. It conferred on the administrator designated powers and made appropriations to accomplish the purposes of the act. "Persons engaged in

national defense activities'' were defined to include enlisted men in the naval or military service, employees in the Navy or War Departments assigned to duty at naval or military reservations, posts or bases, and workers in industries connected with and essential to the national defense. It provided for termination of the authority when the President should state that the emergency declared by him on September 8, 1939, ceased to exist, and in that event for the disposition of the property. The administrator was empowered to pay to the state or political subdivision annual sums in lieu of taxes upon property not exempt from taxation.

Section 10 of the Lanham Act reads: ''Notwithstanding any other provision of law, the acquisition by the Administrator of any real property pursuant to this Act shall not deprive any State or political subdivision thereof of its civil or criminal jurisdiction in and over such property, or impair the civil rights under the State or local law of the inhabitants on such property.''

Regardless of other considerations, the provisions of the section just quoted appear to be determinative of the question insofar as the rights of the petitioners, Freda Allen and Miyo Zulim are concerned. A fair construction of that section may be said to be the following: Notwithstanding the fact that the United States may acquire exclusive jurisdiction over such defense housing projects, exclusive jurisdiction is not to be deemed to be created by pursuing the authority vested by this act. ■ It is well settled that the United States Government may acquire land within a state by donation, purchase or condemnation and devote the same to a public use without withdrawing such lands from the jurisdiction of the state. (*Surplus Trading Co.* v. *Cook, supra.*) And it is not questioned that under the law the state may cede and the United States may accept cession of jurisdiction upon any express terms, conditions or reservations (*United States* v. *Unzeuta*, 281 U. S. 138 [50 S. Ct. 284, 74 L. Ed. 761]), and that the state and the United States may make any suitable agreement with respect to mutual or exclusive exercise of jurisdiction over land acquired or to be acquired by the United States (*Collins* v. *Yosemite Park & C. Co.*, 304 U. S. 518 [58 S. Ct. 1009, 82 L. Ed. 1502].) ■ It follows from the express refusal in the Lanham Act to take exclusive jurisdiction that the citizens residing in the areas affected by that act have not been deprived of the exercise of their rights of suffrage in the county in which the areas are situated. The

use of the expression "civil rights" in the language of the section may be deemed to include the political right of suffrage. Certainly where the Congress has declined exclusive jurisdiction and has expressly preserved to the citizens their civil rights, we should not labor to find an inference which would deprive them of the right of suffrage. The petitioners Allen and Zulim are therefore entitled to have their affidavits of registration accepted by the respondent.

 Public Law No. 671, 76th Congress, (54 Stats. 676), approved June 28, 1940, was "an act to expedite national defense and for other purposes." Title II thereof authorized the Navy and War Departments and the United States Housing Authority, in connection with the national defense program, to cooperate in making available necessary housing for persons engaged in national defense activities. It defined "persons engaged in national defense activities" as enlisted family men (exclusive of officers) who were in the naval and military service, employees of the Navy and War Departments assigned to duty at naval or military reservations, posts or bases, and workers with families who were engaged in industries connected with and essential to the national defense program. Authority to proceed was made dependent upon the approval of the President and upon his determination that there existed an acute shortage of housing in the locality involved which impeded the national defense program. Under the operation of that act the United States Housing Authority would obtain title to the land and lease it to the Navy or War Department. The act provides: "Notwithstanding other provisions of this or any other law, the Department leasing a project shall have the same jurisdiction over such project as it has over the reservation, post, or base in connection with which the project is developed." It also provides that "the provisions of section 355 of the Revised Statutes shall not apply to the acquisition of any real property by the Navy or War Department or by the Authority for the purposes of this title or to the project developed thereon."

Section 355 of the Revised Statutes (Amendment approved February 1, 1940, 54 Stats. 19, 33 U. S. C. A. pock. pt. § 733) provided that no public money should be expended upon any site or land purchased by the United States for the purpose of erecting thereon any armory, arsenal, fort, fortification, navy yard, customhouse, lighthouse, or other public building of any kind whatever, until the Attorney General had given

his written opinion in favor of the validity of the title. The section also provided that notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States "over lands or interests therein which have been or shall hereafter be acquired by it shall not be required," but the authorized officer of any department or agency was given power in such cases and at such times as deemed by him desirable to accept or secure the state's consent to or cession of jurisdiction, exclusive or partial, over such lands or interests as he deemed desirable, and to indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of acceptance with the governor of the State. "Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

A comparison of the provisions of the Lanham Act and the earlier Public Law No. 671, 76th Congress, discloses a similarity of objective, namely, provision for necessary housing in connection with national defense activities. A marked distinction between the two enactments is at once apparent. The language of the earlier act imposed on the War or Navy Department the same jurisdiction over the housing project as it had over the reservation, post or base in connection with which the project was developed; it abrogated the provisions of section 355 of the Revised Statutes including the provision which declined acceptance of jurisdiction over land acquired by the United States unless notice of acceptance of such jurisdiction was filed. The language of the later Lanham Act expressly declared an intention not to accept exclusive jurisdiction of any lands acquired pursuant thereto. An examination of the language of the two acts pertinent to the matter of jurisdiction may properly be said to lead to the conclusion that the intent under the earlier act was to acquire lands and develop projects in the nature of naval or military defense housing projects, and under the Lanham Act in the nature of civilian defense housing projects. But this distinction would not likewise lead to the conclusion that the United States Government acquired or intended to acquire exclusive jurisdiction over the naval or military housing project unless it could also be said that such projects were "other needful buildings" within the meaning of clause 17, of section 8 of article I of the Constitution. The jurisdiction over the project granted to the War or Navy Department does not

necessarily mean exclusive jurisdiction by the United States unless other facts appearing in the record evidence the acquisition and exercise of such jurisdiction. There is no evidence that the defense housing project known as "Navy 2" or "California 4082," is used strictly for the performance of any governmental functions. It is not located on a naval reservation over which the United States had acquired exclusive jurisdiction. Neither the land nor the dwelling units thereon are used in the performance as such of any naval duties or maneuvers. The buildings merely serve as dwellings for the workers and enlisted men who are employed in national defense activities in the Navy Reservation which is without the confines of the area. There is affirmative evidence in the record that the United States Government has not sought to acquire exclusive jurisdiction over the project known as "Navy 2." On the contrary, pursuant to the amendment to the Lanham Act, it has made grants of money for the benefit of the county of Solano, the Vallejo School District, and the city of Vallejo, to enable them to exercise their respective jurisdictions in the matter of furnishing to said project, municipal facilities and services, including the equipment and operation of schools, sewage disposal, water distribution, fire protection, health centers, and hospital additions. Insofar as the actual exercise of jurisdiction is concerned, no distinction appears to have been made between the project known as "Navy 2" or "California 4082," and the other defense housing projects here involved.

· No express application for or consent to the exercise of exclusive jurisdiction by the United States Government has been made or given. The term "other needful buildings" has been considered in the light of the intention of the constitutional and statutory provisions. (*James* v. *Dravo Contracting Co.*, 302 U. S. 134 [58 S. Ct. 208, 82 L. Ed. 155, 114 A. L. R. 318] ; *Battle* v. *United States*, 209 U. S. 36 [28 S. Ct. 422, 52 L. Ed. 670] ; *United States* v. *Wurtzbarger*, 276 Fed. 753 ; *United States* v. *Tucker*, 122 Fed. 518 ; *Sharon* v. *Hill*, 24 Fed. 722, 726 [10 Sawy. 666] ; *Sinks* v. *Reese*, 19 Ohio St. 306 [2 Am. Rep. 397] ; *Lowe* v. *Lowe*, 150 Md. 592 [133 Atl. 729, 46 A. L. R. 983] ; *Herken* v. *Glynn*, 151 Kan. 855 [101 P. (2d) 946].) The term has been held to include locks and dams, post offices, custom houses, Indian training schools, homes for disabled volunteer soldiers, and war chemical manufacturing plants ; but in each of those cases, as dis-

tinguished from the present proceeding, the property was acquired for use by the United States Government in the performance of a governmental function, and exclusive jurisdiction was consented to or ceded by the state and was exercised by the United States. ▋ Land acquired by the United States which is not subject to the exclusive legislative authority vested by the Constitution, remains subject to the jurisdiction of the state in matters not inconsistent with the free and effective use of the land for the purpose for which it was acquired. Further or exclusive authority may be ceded by the state on any terms acceptable to the United States. (*Fort Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525 [5 S. Ct. 995, 29 L. Ed. 264]; *Palmer* v. *Barrett,* 162 U. S. 399 [16 S. Ct. 837, 40 L. Ed. 1015]; *United States* v. *Unzeuta, supra; Surplus Trading Co.* v. *Cook, supra; Collins* v. *Yosemite Co., supra.*)
▋ There is no showing in the present proceedings that grants of authority have been expressly conferred by cession or agreement. The United States cannot be compelled to accept the burdens of exclusive jurisdiction along with the title to land acquired for purposes not strictly within the classes designated in the Constitution. (*Silas Mason Co.* v. *Tax Commission,* 302 U. S. 186 [58 S. Ct. 233, 82 L. Ed. 187]; *Atkinson* v. *State Tax Commission,* 303 U. S. 20 [58 S. Ct. 419, 82 L. Ed. 621].) By the Lanham Act the Federal Government expressly declined exclusive jurisdiction; and as to the project known as "Navy 2" acquired under the earlier act, it does not appear to have desired or to have exercised such exclusive jurisdiction. There is therefore no sound basis upon which we may announce the conclusion that the United States has undertaken such jurisdiction of the defense housing project known as "Navy 2" as would deprive citizens residing thereon of the elective franchise, as distinguished from citizens residing on other projects who were expressly declared not to be deemed deprived of their civil or political rights. Accordingly we have concluded that the petitioner, Dorothy Johnson, is also entitled to have her affidavit of registration accepted by the respondent.

Let the peremptory writ issue as prayed in each of said proceedings.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Ward, J. pro tem., concurred.