**ROGERS v. SQUIER, Warden.**

No. 11398.

Circuit Court of Appeals, Ninth Circuit.

Nov. 18, 1946.

Willis Rogers, in pro. per., and Booth Goodman, of San Francisco, Cal., for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Guy A. B. Dovell, Asst. U. S. Atty., of Tacoma, Wash., for appellee.

Before GARRECHT, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

Appellant was convicted in the federal court for Utah of the crime of rape charged to have been committed in 1936 on the Fort Douglas military reservation in that state. His petition for release on habeas corpus, denied after a full hearing below, raises the question whether the court had jurisdiction to try the offense.

The Fort Douglas post, originally embracing an area of 2,560 acres, was reserved from the public domain by executive order in the year 1867. Its area has since fluctuated through the disposition from time to time of certain parcels and the acquisition of additional lands, so that it is now said to comprise approximately 8,000 acres.[1] Utah was admitted into the Union in 1896. The enabling act contained no provision retaining jurisdiction in the United States over this reservation. Accordingly federal jurisdiction exists only if it has been ceded by the state. Fort

Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264.

By an act approved February 20, 1903, Laws of Utah 1903, c. 14, the Utah legislature ceded to the United States jurisdiction "to and over any and all lands or territory within this State which has been or may be hereafter acquired by the United States for the purpose of sites for public buildings, of every kind whatever, authorized by Act of Congress; the State, however, reserving the authority to execute its process, both criminal and civil, within such territory." The governor was by the act "authorized and empowered to execute all proper conveyances in the cession herein granted upon request of the said United States, or proper officers thereof, whenever any land shall have been acquired for such purpose." Pursuant to this authorization the governor of Utah, on February 24, 1904, executed a formal document ceding jurisdiction to the United States over the Fort Douglas military reservation. The document contained recitals to the effect that the reservation embraces lands aggregating about 9,190 acres, and that application has been made to the governor by the Secretary of War for the cession of jurisdiction over the same to the United States, as contemplated by the federal constitution.[2]

We are told that subsequent to the governor's deed of cession, and prior to March, 1911, additional lands were acquired by the United States for the use of this military post. On March 9, 1911, an act of the Utah legislature was approved in form as follows: "That jurisdiction be, and the same is hereby, ceded to the United States in and over all lands comprised within the limits of the military reservations of Fort Douglas and Fort Duchesne, in the State of Utah to continue so long as the United States shall hold and own the same for military purposes or in connection therewith and no longer, saving, however, to the said State the right to serve all civil process and such criminal process as may

---

[1] Consult Military Reservations, National Cemeteries, and Military Parks, Rev.Ed.1916, p. 401, and pamphlet of the War Department, issued June 4, 1942, on the subject of Military Reservations in Utah.

[2] Art. 1, Sec. 8, Clause 17.

lawfully issue under the authority of this State against persons charged with crimes against the laws of the State, committed within or without said reservations." Laws of Utah 1911, c. 41, p. 58.

In 1943 the legislature amended the general act of February 20, 1903, to read: "Jurisdiction is hereby ceded to the United States in, to and over any and all lands or territory within this state which have been or may be hereafter acquired or leased by the United States for military or naval purposes and for forts, magazines, arsenals, dock yards and other needful buildings of every kind whatever authorized by act of congress; this state, however, reserving the right to execute its process, both criminal and civil, within such territory." Laws of Utah, 1943, c. 40, Utah Code Ann.1943, § 27—0—1.

■ Habeas corpus may appropriately be granted where, as here, jurisdiction of the court in the criminal case depended upon a question of law, there being no dispute of facts. Bowen v. Johnston, 306 U. S. 19, 59 S.Ct. 442, 83 L.Ed. 455. Appellant contends that the 1903 legislation was not intended as a cession of exclusive jurisdiction, or at least that there was no clear expression of the intention; and that the subsequent legislation of March 9, 1911 is confirmatory of the non-exclusive scope of the original cession. The argument is that the reservation in the earlier act of "the authority to execute" criminal process amounts to a saving of jurisdiction over criminal offenses punishable under state law, particularly since the word "exclusive" is not used in the ceding portion of the act. The emphasis is on the word "execute," which is said to import more than mere service. The distinction is fanciful; the same verbiage is retained in the 1943 statute, supra, the broad purpose of which is hardly open to question. In making these jurisdictional cessions it has been common practice of the states to reserve the authority to serve or execute state process, the purpose being to prevent the area affected from becoming a sanctuary for offenders or those seeking to avoid process. In re Ladd, C.C., 74 F. 31; United States v. Unzeuta, 281 U.S. 138, 143, 50 S.Ct. 284, 74 L.Ed.

761. However narrowly the 1911 act may be interpreted, the jurisdiction earlier ceded could not be recaptured without consent of the United States. In re Ladd, supra; United States v. Unzeuta, supra.

The concluding phrase of the 1911 act is obscurely worded and its meaning not wholly free from doubt. It is not thought, however, that the intent was to reserve more than the right of service of process, for the saving clause is in express terms directed to the subject of process, not jurisdiction to try offenses. It would seem probable, also, from the phraseology used, that the legislature was concerned with the necessity for the local prosecution of crimes theretofore committed on portions of the reservation over which jurisdiction had not already been formally ceded, or possibly with the exercise by the state of powers not inconsistent with the general jurisdictional cession. As appears from the files of the War Department, the Judge Advocate General on March 17, 1928, upon a review of the pertinent legislation, gave it as his opinion that the United States is vested with exclusive jurisdiction over the entire Fort Douglas reservation. A cognate opinion of the Judge Advocate General, in a situation involving some doubt, was regarded by the Court in Bowen v. Johnston, supra, 306 U.S. at pages 29, 30, 59 S.Ct. 442, 83 L.Ed. 455, as having persuasive weight. Consult also United States v. Unzeuta, supra; Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, 127 A.L.R. 821; James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Pacific Coast Dairy v. Department, 318 U.S. 285, 63 S. Ct. 628, 87 L.Ed. 761. The record intimates that the opinion of the Utah authorities on the subject did not differ from that of the Judge Advocate General. Appellant testified below that he was placed under arrest by officers of Salt Lake County, in which Fort Douglas is located, and was later turned over to the federal authorities when it was learned that the crime had been committed within the confines of the reservation.

We conclude that the court had jurisdiction of the offense.

Affirmed.