**COMMISSIONERS OF SINKING FUND OF CITY OF LOUISVILLE et al. v. HOWARD et al.**

Court of Appeals of Kentucky.
March 28, 1952.

Rehearing Denied May 16, 1952.

1947, the City of Louisville enacted an ordinance proposing the annexation of certain territory adjoining the city, including the Federal area, and in 1950 a final annexation ordinance was enacted, declaring the territory to be annexed to the city. The occupational license tax ordinance was originally enacted in 1948, and was reenacted in 1950.

By an Act of 1940, Section 106, Title 4, U.S.C.A., Congress provided that any state or "any duly constituted taxing authority therein, having jurisdiction to levy such a tax," may levy and collect income taxes in any Federal area within the state "to the same extent and with the same effect as though such area was not a Federal area." By Title 4 U.S.C.A. § 110(c), "income tax" is defined as "any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts."

Gilbert Burnett, Robert Meagher, and Alex P. Humphrey, all of Louisville, for appellants.

William A. Armstrong, Donald E. Armstrong, Louisville, for appellees.

CULLEN, Commissioner.

In a declaratory judgment action, the Jefferson Circuit Court held that the City of Louisville was not entitled to collect the city's occupational license tax from persons employed at the Naval Ordnance Plant, located upon property owned by the United States Government. The city appeals.

The controlling question is whether the city had power to annex the Federal area and make it a part of the city, so that persons working in the area would come within the terms of the license tax ordinance, providing that the tax shall be computed on the gross receipts from work done, business conducted or services performed "in the City.".

The area embracing the Naval Ordnance Plant was acquired by the Federal Government, by condemnation, in 1940. Thereafter, in 1941, the Secretary of the Navy accepted "exclusive jurisdiction" over the land, and the acceptance was acknowledged by the Governor of Kentucky. In

It is agreed by all parties that the area embracing the Naval Ordnance Plant came under the "exclusive jurisdiction" of Congress by virtue of Art. I, Section 8, Clause 17 of the Federal Constitution, KRS 3.010, the acceptance of jurisdiction by the Secretary of the Navy, and the recognition of that acceptance by the Governor of Kentucky. The difference of opinion is as to the effect of such exclusive jurisdiction.

It is the position of the appellees that, with respect to areas under the exclusive jurisdiction of Congress, the jurisdiction of the state and its political subdivisions is completely ousted, and to all intents and purposes the land ceases to be a part of the state within whose borders it lies; that such areas occupy the same status as if they were separate provinces or countries. In support of this position, appellees cite such cases as Ft. Leavenworth R. R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; Arlington Hotel Co. v. Fant, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447; United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761; Surplus Trading Company v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; Standard Oil Co. v. California, 291 U.S. 242, 54 S.Ct. 381, 78 L.Ed. 775; Silas Mason Co. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187; and Pacific Coast Dairy v.

Department of Agriculture of California, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761. We do not question the soundness of those cases, but we think they are not controlling of the issue before us.

■ The cited cases are authority for the proposition that the state is ousted of any jurisdiction to exercise sovereignty *within* an area under the exclusive jurisdiction of Congress. But in the case before us, the act of annexation by the city did not, of itself, represent any effort or attempt by the city to exercise jurisdiction within the area of the ordnance plant. The city merely elected that the area be included within its geographic boundaries as a political subdivision of the state.

■ We are impressed with the argument on behalf of the city that the annexation involved only a question of political geography, and not a clash of political sovereignties. Certainly, it could be of no concern to Congress, in which of its political subdivisions a state chose to consider a Federal area to be physically situated. Whether the ordnance plant is considered to be in Louisville or outside of Louisville could in no way affect the exclusive jurisdiction of Congress to govern the area embracing the plant.

In Davis v. Howard, 306 Ky. 149, 206 S.W.2d 467, we had under consideration another section of the Congressional Act of 1940, authorizing states to collect sales or use taxes in Federal areas. We held that the Act constituted a recession by the Federal Government, to the state, of a portion of the exclusive jurisdiction theretofore possessed by Congress, and that acceptance of such recession on the part of the state would be presumed in the absence of the showing of a contrary intent.

■ Under the Davis case, and those from other jurisdictions therein cited, it would appear that a Federal area within the geographic boundaries of a state lies dormant, so far as concerns the authority of the state to exercise jurisdiction within the area, as long as Congress retains exclusive jurisdiction, but when Congress recedes part of its jurisdiction the area comes back to life as a part of the state to the extent of the recession. It seems to us that, even before a recession of jurisdiction by Congress, the state should have the right to determine in which of its political subdivisions a Federal area shall be deemed to be located, anticipating a recession of jurisdiction, such as the one in this case, that will extend to the political subdivisions as well as the state.

Actually, in the case before us, Congress had receded part of its jurisdiction to Kentucky, and to the political subdivisions of Kentucky, *prior to* the annexation by Louisville. The recession recognized that the land was located in Kentucky, not only with reference to the jurisdiction of the state, but also with reference to the jurisdiction of political subdivisions of the state.

We are advised that the specific question of the power of a city to annex a Federal area has been passed on only in City of Wichita Falls v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434, and in Norfolk County v. City of Portsmouth, 186 Va. 1032, 45 S.E.2d 136. In both those cases the power to annex was upheld.

■ It is our opinion that the annexation of the ordnance plant by the City of Louisville was valid.

■■ The appellees point out that the Congressional Act of 1940 authorizes only the levy of an "income tax," and that in City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248, 253, this court specifically held the Louisville occupational tax was not an income tax. It is true we held in the Sebree case that the tax was not an income tax within the meaning of the Kentucky Constitution, but the question here is whether it is an income tax as that term is defined in the Act of Congress. As previously pointed out in this opinion, the Act of Congress defines "income tax" to include any tax "measured by" net income, gross income or gross receipts. We said in the Sebree case that the Louisville tax is a license tax which "measures the value of the privilege by the amount of earnings or net profits." The tax clearly falls within the definition made by the Act of Congress.

The judgment is reversed, with directions to enter a judgment sustaining the general demurrer of the defendants, and upholding the right of the city to collect the occupational license tax from persons employed at the Naval Ordnance Plant.