W. E. MURPHY, Director of Alcoholic Beverage Control; John Anderson, Jr., Attorney General of the State of Kansas; Arden Rhyne, Sheriff of Leavenworth County, Kansas; and James R. Fussell, County Attorney of Leavenworth County, Kansas, Appellants,

v.

W. B. LOVE, an individual doing business as the Love Transfer Company, Weston, Missouri, Appellee.

No. 5585.

United States Court of Appeals
Tenth Circuit.

Oct. 29, 1957.

John Anderson, Jr., Atty. Gen., and Eugene W. Davis, Topeka, Kan., Counsel for Alcoholic Beverage Control (Paul E. Wilson and Fred N. Six, Asst. Attys. Gen., were with them on the brief), for appellants.

Homer Davis, Leavenworth, Kan., for appellee.

Before BRATTON, Chief Judge, and HUXMAN and BREITENSTEIN, United States Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from a mandatory injunction issued by the United States District Court for the District of Kansas permanently and perpetually enjoining and restraining appellants from interfering with appellee Love in the transportation of liquor from Missouri to the Fort Leavenworth Military Reservation, and for the return of liquor seized from Love by appellants. Jurisdiction is predicated on the ground that interstate commerce is involved.

On October 5, 1955, Agents of the Kansas Alcoholic Beverage Control intercepted at the western approach of the new Municipal Leavenworth Toll Bridge a truck owned by Love which was carrying 66 fifths of alcoholic liquor consigned

from the Austin Liquor Store at Beverly, Missouri, to Major B. C. Snow, Jr., residing on the Military Reservation at Fort Leavenworth. The liquor was not marked or stamped with Kansas revenue stamps evidencing payment of the Kansas gallonage tax, but was stamped evidencing proper payment of Missouri gallonage tax and Missouri sales tax. The liquor was purchased by the consignee from the Austin Liquor Store in Beverly, Missouri, and was delivered to the common carrier for transportation to consignee's residence on the Military Reservation.

Subsequent to the seizure, Love filed his petition in the Federal Court, requesting a mandatory injunction to enjoin and restrain appellants from further interfering with such liquor shipments to Fort Leavenworth and for the return of the seized liquor. Trial was had to the Court. At the conclusion of the trial, the Court made detailed findings of fact and conclusions of law and, based thereon, entered the judgment challenged in this appeal.

Many of the Court's findings of fact are not challenged and need not be considered. The pertinent findings and conclusions of law necessary to consider are as follows: The Court found:

No. 14. That the arrest and seizure took place at a point within the jurisdiction of the State of Kansas.

No. 18. That the shipment in question constituted an interstate shipment under the Commerce Clause.

No. 19. That no taxes were due or collectable by the State of Kansas on the liquor seized and involved in this action. Based upon these findings, the Court concluded as a matter of law:

No. 2. That the arrest and seizure took place within the jurisdiction of Kansas.

No. 3. That the seizure constituted an interference with and a burden upon an interstate shipment and was without legal authority.

No. 4. That the State of Kansas or its agents have no authority to levy or collect any tax on the liquor seized.

■ Eight assignments of error are urged for reversal, but in the main they present but one central question, and that is whether Kansas was empowered to stop this interstate shipment of liquor from Missouri to the Fort Leavenworth Military Reservation because the shipment did not have attached Kansas liquor revenue stamps. It is without dispute that military reservations, such as we have here, are separate entities and do not constitute a part of the state in which they are located for general jurisdictional purposes.[1] So also it must be conceded that the seizure of this shipment is an interference with interstate commerce and constituted a burden thereon which the State may not impose, absent statutory authority authorizing the same.

■ Kansas does not by statute prohibit the importation of liquor into the State and, of course, may not prohibit the transportation in interstate commerce of intoxicating liquor through its territorial boundaries. Under reasonable regulations and for permissible purposes, it may control the interstate transportation of liquor through its territorial boundaries.[2] Whether it has done this is the crux of this case and requires a consideration of the Kansas Liquor Control Act of 1949.[3]

1. Pacific Coast Dairy v. Department of Agriculture of California, 318 U.S. 285, 63 S.Ct. 628, 87 L.Ed. 761; Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S. Ct. 455, 74 L.Ed. 1091; Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L. Ed. 991; Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L. Ed. 264.

2. Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814; Carter v. Commonwealth of Virginia, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605; Duckworth v. State of Arkansas, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294.

3. G.S.1949, Chapter 41, as amended.

The Kansas Liquor Control Act sets up a comprehensive scheme for liquor control from the time of manufacture or importation into the State to the ultimate sale at retail and also provides for the collection of revenue thereon. The provisions necessary for consideration may be generally summarized as follows: The statute provides for the licensing of distributors and retailers and provides that a licensed distributor may sell only to another licensed distributor or to a licensed retailer; that no distributor may sell or deliver alcoholic liquor other than to a person authorized to receive the same; and that no licensed retailer may purchase or receive alcoholic liquor from any source except from a licensed distributor, having a place of business in Kansas.[4] Section 41-501 of the Act provides that for the purpose of receiving revenue a tax is imposed on the privilege of engaging in business as a manufacturer or as a distributor at wholesale.[5]

█ Whether Kansas under the above statute may collect a liquor tax on alcoholic beverages bought and sold on the Reservation requires first a consideration of the Act of the Kansas Legislature ceding jurisdiction over the Fort Leavenworth Military Reservation to the Federal Government and secondly of the Buck Act.[6] It is well established by the decisions that a State may attach reservations to an Act ceding territory to the Federal Government and may thereafter exercise the Governmental functions so reserved on such territory.[7]

█ By Chapter 66, § 1 of the Laws of 1875, Kansas ceded exclusive jurisdiction of the Fort Leavenworth Military Reservation to the United States, reserving only the right to serve criminal and civil process thereon and also reserving the right "to tax the property and franchises of any railroad, bridge, or other corporations within the boundaries of such lands." Looking to the ceding act, no rights were reserved to levy or collect such taxes as are involved herein.

If such power exists, it must be sought and found in the Buck Act of 1940. Section 105(a) of the Act gives the state the right to levy and collect sales and use taxes with respect to the sale or use of property where the transactions in whole or in part occurred on a reservation. Section 110(b) provides that "The term 'sales or use tax' means any tax levied on, with respect to, or measured by, sales, receipts from sales, purchases, storage, or use of tangible personal property * * * " Appellee makes a strong argument, and not without some basis therefor, that the Kansas Liquor tax does not fall within this definition. It is pointed out that by the plain language of the statute the tax is a privilege tax for the privilege of doing business and is, therefore, not one of the taxes the State may collect under the Buck Act.

It is true that the Kansas Act specifically states that the "tax is imposed upon the privilege of engaging in business as * * * " a distributor of liquor. Why Kansas saw fit to state that the liquor tax was a privilege tax for the privilege of doing business is not clear. It is apparent, however, that the tax is a revenue tax. It is so described. It is also clear that it is levied with respect to sales and the amount of tax due is measured by the amount of liquor sold. It is not a retail liquor tax since it is not exacted from the retail purchaser of liquor. It is exacted only from the distributor. He alone must pay the tax. In fact, so far as this case is concerned, he is the only one who can pay it. But it is immaterial whether it is a retail sales tax or a distributor's liquor sales tax. It is in our opinion a liquor sales tax within the meaning of the Buck Act.

---

4. The Act contains like provisions applying to wholesalers or manufacturers.

5. The tax levied is a gallonage tax and varies with the different kinds of liquor.

6. 4 U.S.C.A. § 105 et seq.

7. Collins v. Yosemite Park & Curry Co.,

304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502; Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; Arlington Hotel Company v. Fant, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447; United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761.

With respect to the designation of the Kansas tax as a privilege tax the case in many ways is similar to Howard v. Commissioners, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617, where the question was whether a City of Louisville tax, called an occupation tax, was nonetheless an income tax, bringing it within the provisions of the Buck Act. For taxing purposes, the City of Louisville sought to levy an occupation tax measured by earnings upon employees employed upon a federal enclave within the City of Louisville. The Supreme Court held that the Tax was an income tax, measured by the amount of income, notwithstanding its designation as an occupation or privilege tax and was, therefore, collectable under the Buck Act.

We agree with appellants' contention that a gallonage tax may under the Buck Act be imposed upon liquor shipments to persons residing on the Military Reservation and collected from them. The difficulty is that Kansas has not by statute or regulation provided for the collection of liquor taxes with respect to liquor purchased on the Reservation, or purchased in states other than Kansas, and shipped in interstate commerce to the purchaser on the Reservation. Kansas does not seek to collect a tax from the purchaser of this liquor. In fact, it concedes that under its law there is no way in which the purchaser could pay the Kansas tax. The effect of what it seeks to do by its laws and regulations is to stop entirely all interstate transportation of liquor to inhabitants of the Reservation and force them to come into Kansas and buy all liquor, to be consumed on the Reservation, from a licensed retail liquor dealer in Kansas. It is one thing to say that Kansas may by statute and regulations promulgated thereunder provide for the collection of its liquor tax on liquor going to the Reservation or sold on the Reservation. It is quite another thing to say that it may control or regulate the purchase of liquor on the Reservation or to entirely prohibit shipment in interstate commerce of liquor purchased outside Kansas for delivery to the Reservation.

In many respects the facts of this case are similar to those in Collins v. Yosemite Park and Curry Company, 304 U.S. 518, 58 S.Ct. 1009, 1012, 82 L.Ed. 1502. Involved there was the Yosemite National Park enclave in California. The State Act, St.1919, p. 74, ceding the enclave territory to the Federal Government reserved "the right to tax persons and corporations, their franchises and property on the lands included in said parks." California's Liquor Control Act, West's Ann.Bus. & Prof.Code, § 23000 et seq., was much like that of Kansas, in that it required licensed wholesalers and retailers and the purchase of liquor stamps by them. California sought to compel liquor operators in the Park to take out licenses and pay license fees. The Supreme Court pointed out that since all California reserved was the right to collect taxes it had no power to subject business done in the Park to the regulatory provisions of its Liquor Control Act. The Court held that California had the right to use means to force a collection of any tax due on transactions carried on in the Park but held that " *   * it seems clear that the licenses required by section 5 go beyond aids to the collection of taxes and are truly regulatory in character." The Court further said, "As there is no reservation of the right to control the sale or use of alcoholic beverages, such regulatory provisions as are found in the Act under consideration are unenforceable in the Park."

The Act of 1875 ceding the Fort Leavenworth Military Reservation to the United States did not reserve the right to control or regulate business on the Reservation. The Buck Act does not give the State such power. Under it at most the State can collect taxes on liquor sold to or on the Reservation. The Buck Act gave the State no right to regulate or control business done in interstate commerce with persons on the Reservation. All such power remained in the Federal Government. 4 U.S.C.A. § 108 specifically provides that Sections 105 to 110 shall not otherwise [than for the collection of taxes] deprive the

United States of its exclusive jurisdiction over the Reservation.

■ Kansas may by statute and appropriate regulations provide for the collection of liquor taxes due under its laws and collectable under the Buck Act on liquor sales to or on the Reservation. Such laws or regulations would not constitute an unreasonable burden upon interstate commerce. But, as pointed out, Kansas has not done this since its laws provide that the tax may be paid only by persons who are regulated under the Kansas Act.[8] Since Kansas does not have territorial jurisdiction to regulate liquor in the Federal enclave it has no authority to impose revenue measures concerning liquor which are inseparable from such regulatory aspects of the Act. The effect of what it seeks to do by the regulatory provisions of its law is to make impossible the purchase or sale of liquor on the Reservation, or importation of liquor in interstate commerce into the Reservation. Such a construction would not only place a burden on interstate commerce of liquor to the Reservation but would stop it entirely. In Johnson v. Yellow Cab Transit Company, 10 Cir., 137 F.2d 274, 279, we said that the " * * * state has no power to forbid the transportation in interstate commerce of intoxicating liquor through its territorial boundaries." and that a state " * * * has no jurisdiction to require or grant permits for the importation of intoxicating liquors into * * *" a reservation.

■ The contention that injunctive relief should be denied because appellee came into Court with unclean hands needs no extended discussion. It is argued that the Assimilative Crimes Act makes the criminal provisions of the Kansas Liquor Control Act applicable to military reservations and hence the issuance of the injunction aids in the commission of a violation of the Criminal Code of the United States. Since there is no state law prohibiting the importation in interstate commerce of liquor into the Reservation, there is no violation of a Kansas criminal statute. At most there was a violation of the provision making it unlawful to have possession in Kansas of liquor not bearing the Kansas revenue stamps. But liquor passing across Kansas in interstate commerce does not come to rest in Kansas and, therefore, the law making it unlawful to have in possession in Kansas liquor without Kansas revenue stamps attached thereto has no application to such shipments.

Affirmed.

BRATTON, Chief Judge(dissenting).

The Twenty-first Amendment to the Constitution of the United States, and the Act of August 27, 1935, 49 Stat. 877, 27 U.S.C.A. § 122, each prohibit the transportation or importation of intoxicating liquor into a state in violation of the laws of such state. A state is free to forbid the importation of intoxicating liquor in interstate commerce into its territorial boundaries, or it may enact regulatory provisions for such importation. State Board of Equalization of California v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38; Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424. And exercising its prerogatives in that field, the State of Kansas in 1949 enacted a liquor control act. Chapter 41, General Statutes of Kansas, 1949. The purpose of the act was to regulate and tax the manufacture, sale, possession, and transportation of intoxicating liquor within the state. State v. Larkin, 173 Kan. 112, 244 P.2d 686.

The act imposes a gallonage tax upon intoxicating liquor. Payment of the tax is evidenced by tax stamps or crowns to be affixed to the original package, K.G.S. 1949, § 41–502. It is unlawful for a person to have liquor in his possession without the stamp thereon required by law; but one may possess or transport not to exceed two quarts for the personal use of the possessor, his family, and his guests § 41–407. A common carrier is not per-

8. See G.S.1949, 41–504.

mitted to transport into the state liquor upon which the tax has not been paid, except for delivery to manufacturers, dealers, or jobbers who maintain a bonded warehouse within the state § 41–408. And under the act, particularly § 41–407, unstamped liquor is prima facie contraband subject to seizure and confiscation. Therefore it is clear that if the non-tax-paid shipment in question had been consigned to an individual in Kansas outside of the military enclave of Fort Leavenworth it would have been subject to seizure after coming into the state and before being delivered to the consignee.

The shipment in question was moving to a consignee residing within the military enclave of Fort Leavenworth. And, except as modified by statute, the area within the enclave is under the exclusive jurisdiction of the United States. But it is provided by Act of Congress commonly referred to as the Buck Act that no person shall be relieved of liability for payment of, collection of, or accounting for any sales or use tax levied by any state having jurisdiction to levy such tax on the ground that the sale or use, with respect to which such tax is levied, occurred in whole or in part within a Federal area; and that such state shall have full jurisdiction and power to levy and collect any such tax in any Federal area within such state to the same extent and with the same effect as though such area was not within a Federal area. 4 U.S. C.A. § 105. By such act, Congress effected a recession of jurisdiction to the State of Kansas in respect to the laying and collecting of use taxes. With such recession of jurisdiction in effect, the laws of Kansas in respect to the levying and collecting of use taxes upon liquor and in respect to the possession or transportation of liquor upon which the tax has not been paid are in force and effect within the enclave at the fort to the same extent as in other parts of the state. Howard v. Commissioners, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed 617; Commissioners of Sinking Fund of City of Louisville v. Howard, Ky., 248 S.W.2d 340; Howard v. Commissioners of Sinking Fund, Ky., 249 S.W.2d 816.

The case of Collins v. Yosemite Park and Curry Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502, was decided before the enactment of the Buck Act and therefore is without persuasive application here. The case of Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814, was decisively different from this one and does not have the effect of immunizing this shipment of liquor from seizure and confiscation. There, a shipment of liquor was moving from Illinois, through Missouri, into Oklahoma, and thence to a consignee within the military reservation of Fort Sill. But Oklahoma was a dry state. It prohibited the sale of liquor, except for medical purposes. It had no law regulating the taxing or control of liquor within the state. Liquor in Oklahoma was not subject to any state tax. And therefore the Buck Act was completely inapplicable. And the case of Miller Brothers Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744, upon which appellee places strong reliance, fails to lend effective support to the judgment of the court below. There, Maryland sought to assert a use tax against a merchant engaged in business in Delaware. Sales of merchandise were made in Delaware to purchasers in Maryland. In some instances, the purchasers received the merchandise at the store in Delaware and transported it into Maryland. And in some instances, the deliveries were made by common carrier. But in all instances, the sales were made at the store in Delaware. It was held that the merchant in Delaware was not liable for the use tax under the law of Maryland. The basis for the holding was that the practical and legal effect of the contention of Maryland was to make the vendor in Delaware liable for a use tax due from the purchaser. Here, Kansas was not asserting a use tax against the carrier. It was engaged in the enforcement of its law in forbidding and making penal the possession and transportation

of liquor upon which the tax had not been paid.

It is my view that after the truck passed from Missouri into Kansas, the liquor being transported without the stamps or crowns attached to the original containers or packages as required by the law of Kansas became contraband subject to seizure and confiscation.

I would reverse the judgment.