Randy Gene Harbin, the appellant, was convicted of escape in the third degree and was sentenced to 15 years' imprisonment as a habitual offender. The question presented on this appeal is whether the Circuit Court of Madison County had subject-matter jurisdiction over the felony offense of escape where the escape occurred on the Redstone Arsenal military reservation.
The evidence shows that on October 14, 1988, officers of the Huntsville Police Department went to a construction site located at Redstone Arsenal in Huntsville, Madison County, Alabama. Huntsville police officer Bill Davis testified, "We have a working relationship with the provost marshal's office, and we have full authority to go on the Arsenal to make arrests at any time through his office." Officers of the Huntsville Police Department arrested the appellant for burglary. However, the appellant escaped after he had been handcuffed but before he could be placed in a patrol car. An immediate search of the Arsenal failed to locate the appellant. He was captured in June 1989 in the State of Georgia.
Defense counsel raised the ground of no jurisdiction in his oral motion for a dismissal filed after the State had presented its case-in-chief.
The trial judge denied the motion, stating:
 "[T]hese are the facts that are going to cause me to overrule your motion. . . . This Officer Davis has testified that the defendant was a civilian employee at a construction site at the Thiokol plant on Redstone Arsenal, which is a private enclave within a federal installation. Thiokol has been there since day one and, therefore, that is the reason for which I overrule your motion."
After further argument by defense counsel, the trial judge stated:
 "Well I will overrule the motion for the reasons previously stated. I would simply add to it this, Bruce: that the nature of the crime here I think also carves out a distinction. I don't believe there is any question about the fact that he was in the custody of state law enforcement officers and the undisputed testimony is that they were at a place where they had a right to be to do that, so I believe that that also is an exception to what you have cited." *Page 1265 
There was no testimony of the trial judge's assertion that the Thiokol plant "is a private enclave within a federal installation." In this regard, Officer Davis testified only that he "went to Redstone Arsenal on the south end, on Thiokol property, to a construction site." Moreover, it is apparent, from statements subsequently made by the trial judge, that this was not the basis for his ruling.
At sentencing, the trial judge stated:
 "[S]ince we tried this case, I've conducted further research. Perkins and Boyce, Criminal Law, 3rd edition, pages 563 to 564, indicates that escape is, as I held at trial, a continuing offense and also to that same effect is U.S. Supreme Court decision of United States vs. Bailey, 444 U.S. 394 [100 S.Ct. 624, 62 L.Ed.2d 575], 1980 decision of the U.S. Supreme Court holding that an escape from custody is a continuing offense and that an escapee can be held liable for his failure to return to custody as well as for his initial departure.
 "My feeling at trial and again here today is that, even though Mr. Harbin did escape from the custody of the Huntsville Police Department officer on Redstone Arsenal, at some point he had to leave the boundaries of that to make it to Georgia to the east of us, which carried him across Madison County, giving us a jurisdictional basis for the indictment and for the trial and for the denial of your motion to dismiss the charges and also as a predicate now for me to sentence.
". . . .
 "Unless he swam the Tennessee River, he had to come through Madison County to get to Georgia. Of course, I suppose that could be a hole in the evidence, but, if it is, they'll take care of that where they normally take care of those things."
The appellant also filed a post-trial motion in arrest of judgment. Attached to that motion was a copy of a deed (a patent of cession), dated November 2, 1942, from the State of Alabama ceding exclusive jurisdiction to the United States over certain specifically described land in Madison County "in connection with the Huntsville Arsenal and the Redstone Ordnance Plant." Attached to the deed was a document indicating that the United States had accepted that "cession of jurisdiction." That deed contains the following provision: "PROVIDED, That the jurisdiction so ceded shall not prevent the execution upon such land of any process, civil or criminal, issued under the authority of this State, except as such process might affect the property of the United States thereon."
Also attached to the motion in arrest of judgment was an uncertified copy of a deed, dated April 9, 1943, whereby the State of Alabama ceded "exclusive jurisdiction to the United States over the lands comprising the sites of the Huntsville Arsenal Military Reservation and the Redstone Arsenal Military Reservation, in Madison County, Alabama." There was notice that the United States accepted "exclusive jurisdiction over the lands described in the deed of cession." That deed also contains the same provision that the ceded jurisdiction shall not prevent the execution of any civil or criminal process.
After a hearing was held on the motion in arrest of judgment, the motion was overruled. During that hearing, the trial judge did not mention his prior assertion that the Thiokol plant was a "private enclave within a federal installation." He did take judicial notice that "there is virtually only one little area of the Arsenal boundary that he could have escaped Madison County without crossing Madison County property."
The general and well-settled rule is stated in 22 C.J.S.Criminal Law § 165 (1989):
 "[T]he federal courts have exclusive jurisdiction over offenses committed on lands within a state lawfully purchased by the federal government with the consent of the state legislature for the erection of . . . arsenals, . . . and the same applies to offenses committed on lands ceded by a state to the federal government where the state under the terms of the cession expressly relinquishes, or fails to reserve its jurisdiction.
 "Whether or not the federal courts acquire exclusive jurisdiction depends on *Page 1266 
the nature or terms of the legislature's consent or cession. While a state can reserve jurisdiction over offenses committed on lands acquired by the federal government with the legislature's consent, the mere reservation of the right to serve civil and criminal process on the lands acquired does not operate to deprive the federal courts of exclusive jurisdiction."
(Footnotes omitted.) See also 21 Am.Jur.2d Criminal Law § 350 (1981); U.S. Const. art. I, § 8, cl. 17. "The conditions of the cession relating to the execution of criminal process [have been] construed as intended to save the right to execute process within the reservation for crimes committed outside; that is, to prevent the reservation from being a sanctuary for fugitive offenders." United States v. Unzeuta, 281 U.S. 138,143, 50 S.Ct. 284, 285, 74 L.Ed. 761 (1930).
The Assimilative Crimes Act, 18 U.S.C.A. § 13 (Supp. 1990), incorporates by reference the criminal laws of the state where there is no applicable federal criminal law. See United Statesv. Sharpnack, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958).
We agree with the trial judge that the crime of escape is a "continuing offense" to the extent that "an escapee can be held liable for a failure to return to custody as well as for his initial departure." R. Perkins R. Boyce, Criminal Law 563 (3d ed. 1982). However, the continuing nature of the offense of escape relates to the duty of the escapee to "make himself available to the authorities" where it is alleged that the initial escape was justified. Id. at 563-64. It does not enlarge the physical place where the escape actually occurred or expand a court's jurisdiction over the offense. See Ala. Code 1975, § 13A-10-30(b)(1), defining "custody."
Therefore, we find that Officer Davis was correct when he testified that he had authority to make an arrest on Redstone Arsenal. However, we also find that an escape from the custody of an arrest which occurred on the Redstone Arsenal is a federal offense which must be prosecuted in federal court and not in state court.
The judgment of the circuit court is reversed and rendered because that court never had jurisdiction of the charged offense.
REVERSED AND RENDERED.
All Judges concur.