CHARLES W. ANDERSON, APPELLEE, v. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.

FILED JUNE 15, 1918. No. 20090.

1. **States:** MILITARY RESERVATIONS: OPERATION OF STATE STATUTES. If the war department of the United States, in control of a reservation for military purposes, jurisdiction over which has been ceded by the state of Nebraska to the United States, determines that a statute of the state in existence at the time of the cession is inconsistent with and would probably defeat or impair the use of the territory for the purpose for which the cession was made, such statute is not operative within the limits of the reservation for that reason.

2. ———: ———: RAILROADS: FENCES: LIABILITY. The defendant railroad company attempted to fence its right of way within the limits of the Fort Robinson military reservation. It was prevented from so doing by the war department of the government for the reason that the erection of fences "would very greatly restrict the use of the reservation for drill and maneuver purposes," and would "largely defeat the purpose for which the government maintains the reservation." Certain cattle trespassing upon the reservation were killed by an engine of defendant upon its tracks

thereon. *Held,* that the refusal of the war department to permit the erection of the fences constitutes a defense to an action against the railway company, for the value of the cattle killed, under the statute of the state making it liable for such killing if it fail to inclose its tracks.

APPEAL from the district court for Dawes County: WILLIAM H. WESTOVER, JUDGE. *Reversed, and dismissed.*

*A. A. McLauglin, Wymer Dressler* and *Lyle Hubbard,* for appellant.

*J. E. Porter, contra.*

LETTON, J.

Plaintiff is the owner of five head of cattle which were killed by a train of the defendant on the Fort Robinson military reservation in Dawes county. The answer admits the killing, and that the railway through the reservation is not fenced, and pleads as a defense that the reservation is under the exclusive jurisdiction and control of the government of the United States, and not under the control or subject to the laws of the state of Nebraska; that the United States government, exercising its jurisdiction through its duly appointed officers, has ordered and determined that the reservation shall not be incumbered with right of way fences, but shall remain free and open to be used for military maneuvers and for drill grounds, and that the government has expressly ordered and commanded the defendant not to fence its right of way through the same; that, for that reason, the laws of the state of Nebraska as respects fencing of railroads have there been superseded, and the defendant is not liable on account of the absence of a fence. Both parties moved for a directed verdict. The court instructed for plaintiff, and defendant appeals.

In 1885 congress granted a right of way to the Fremont, Elkhorn & Missouri Valley Railway Company through the Fort Robinson military reservation, the location of same to be subject to the approval of the secretary of war. This approval was granted, and the

railroad built accordingly. In 1887 (Laws 1887, ch. 83) jurisdiction over the reservation was ceded to the United States by the state of Nebraska. About half of the length of the right of way through the reservation was fenced by the defendant. In 1911 a controversy arose between the officer in command at the reservation and the defendant regarding the extension of the fences through the reservation. The matter was referred to the war department, and in a letter from the acting secretary of war to the superintendent of the defendant railway company the following is found: "The state, by act of March 29, 1887, ceded exclusive jurisdiction over this reservation, subject to the usual reservations for service of process, and no statute of the state requiring railways to fence their rights of way can be regarded as operative within the reservation of Fort Robinson. Your right of way across that reservation divides it into two nearly equal parts. To place fences thereon would very greatly restrict the use of the reservation for drill and maneuver purposes, and, even though you should put in numerous passage-ways, would cause great inconvenience to the troops there stationed. To permit the fencing of your right of way across the reservation would, therefore, militate against the efficiency of the troops stationed at Fort Robinson and would largely defeat the purpose for which the government maintains the reservation.

"By reason of the above considerations, I am constrained to inform you that the government will not permit the erection of fences along the right of way of your company within the Fort Robinson military reservation, and you are hereby notified to remove all such fences heretofore erected by your company."

Efforts were made by the defendant to procure a modification of this order, and on October 30, 1911, a letter was sent to the attorney for the defendant by the acting secretary of war containing the following: "Referring to your letters, dated September 11 and October 19, 1911, asking for a reconsideration of the

war department's decision not to permit the C. & N. W. Ry. to fence its right of way through the Fort Robinson military reservation, I have the honor to inform you that this matter was most carefully considered prior to the decision of the department, made known to you in office letter of May 23, 1911, and that, since the receipt of your letter of September 11, the case has been thoroughly reviewed with the result that the department is constrained to adhere to its former decision in the premises.

"The commanding officer, Fort Robinson, states that the entire reservation is inclosed by fences with the exception of the wood reserve about six miles from the post proper; that the entire reservation is used for instruction and maneuver purposes; that the railroad passes diagonally through the reservation, separating it into two parts, and, if fenced in as proposed by the railway company, it will greatly interfere with the use of the land for maneuver and drill purposes." Following these communications, defendant made no further efforts to fence the line.

Under the laws of this state, defendant would be liable for the value of the cattle killed on the reservation, unless the action of the war department relieves it from the duty to fence. In *Chicago, R. I. & P. R. Co. v. McGlinn,* 114 U. S. 542, several of the questions involved in this case have been decided. That action was for the value of a cow alleged to have been killed within the Fort Leavenworth military reservation by an engine of the Chicago, Rock Island & Pacific Railroad Company. The facts are very similar to those in this case. Before the cession of that reservation to the United States, a fencing statute of Kansas was in force similar to that of this state. A cow was killed by a train within the limits of the reservation, where the road was unfenced. A judgment in favor of the owner of the cow was affirmed by the supreme court of Kansas, and on appeal to the supreme court of the United States that court held that the same principles apply to the

cession of the reservation to the United States as are in force whenever political jurisdiction and legislative power over any territory are transferred from one nation or sovereign to another; that all laws in conflict with the political character and Constitution of the new government would be at once displaced. "But with respect to other laws affecting the possession, use, and transfer of property, and designed to secure good order and peace in the community, and promote its health and prosperity, which are strictly of a municipal character, the rule is general, that a change of government leaves them in force until, by direct action of the new government, they are altered or repealed. *American & Ocean Ins. Co. v. Canter,* 1 Pet. (U. S.) *511, *542; Halleck, International Law, ch. 34, sec. 14."

The *McGinn* case was submitted upon an agreed statement of facts. The United States government had not asserted that the fencing of part of the reservation would defeat or interfere with the purpose of the cession. The question involved in this case was not necessary to a decision, and was not considered. The decision of that case, therefore, does not determine the issue presented here. The real question in this case is whether the refusal of the war department to allow the defendant to erect a fence constitutes a justification, and excuses its failure to obey the statute. Defendant argues that the fencing statute has been abrogated because the erection and maintenance of fences is inconsistent with the uses of the ceded territory as a military post, and that, if inconsistent with the purpose for which jurisdiction over the territory was ceded, the statute ceased to exist at the time of the cession. Much support to this contention may be found in the opinion of the supreme court of the United States in *Fort Leavenworth R. Co. v. Lowe,* 114 U. S. 525. The Fort Leavenworth military reservation was selected from the public lands. Afterwards it was included in the state of Kansas. The state of Kansas in the case of cession reserved to itself "the right to tax railroad, bridge, and other cor-

porations, their franchises and property, on said reservation." It was asserted by the plaintiff in that case that a state tax levied on the property of a railroad within the reservation was void, and that the saving clause was invalid, congress having exclusive jurisdiction. The principal point decided was that under section 8, art I, of the Constitution of the United States, congress has exclusive legislative authority over "all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings," but that, as to territory acquired by other means within the boundaries of a state, the United States will hold the land subject to this qualification: "That if upon them forts, arsenals, or other public buildings are erected for the uses of the general government, such buildings, with their appurtenances, as instrumentalities for the execution of its powers, *will be free from any such interference and jurisdiction of the state as would destroy or impair their effective use for the purposes designed.* Such is the law with reference to all instrumentalities created by the general government. Their exemption from state control is essential to the independence and sovereign authority of the United States within the sphere of their delegated powers. But, when not used as such instrumentalities, the legislative power of the state over the places acquired will be as full and complete as over any other places within her limits." It was also said: "It is for the protection and interests of the states, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals, and other buildings for public uses are constructed within the states. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the states as would defeat or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority

and political jurisdiction by the state would be desirable, we do not perceive any objection to its grant by the legislature of the state."

The war department has decided that the fencing of the right of way would impair the effectiveness of the territory for the purpose for which the cession was made. That department possesses peculiar and technical skill and knowledge of the needs of the nation in the training of its defenders, and of the necessary conditions to make the ceded territory fit for the purpose for which it was acquired. It is not for the state or its citizens to interfere with the purposes for which control of the territory was ceded, and, when the defendant was forbidden to erect the fences by that department of the United States government lawfully in control of the reservation, no other citizen can complain of nonperformance or hold defendant guilty of a violation of law.

The defense made is supported by the evidence and constitutes sufficient justification for the refusal to fence. It may be noticed that in several instances we have held that a railroad company may be justified in refusing to fence, even though the statute, literally interpreted, required fences to be built in that locality. *Chicago, B. & Q. R. Co. v. Sevcek,* 72 Neb. 799; *Burnham v. Chicago, B. & Q. R. Co.,* 83 Neb. 183. In short, common sense has been applied and a reasonable construction of the statute has been made.

The judgment of the district court is reversed, and the cause dismissed.

REVERSED AND DISMISSED.

MORRISSY, C. J., and ROSE, J., dissent.

HAMER, J., not sitting.