## Commonwealth v. King.

(Decided Feb. 9, 1934.)

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE and DAVID C. WALLS, Assistant Attorneys General, for appellant.

FAUREST & FAUREST for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellee, Orene King, was indicted in the Hardin circuit court for the offense of making false entries upon the books of the Union Bank of Stithton; she, at the time, being the assistant cashier and bookkeeper of the bank. The indictment alleged that the offense was committed in Hardin county, "within Ft. Knox, United States Government Reservation." The appellee filed a written plea to the jurisdiction of the court in which she stated that prior to the year 1920 and subsequent to the year 1900 the United States purchased a large number of tracts of land in Hardin county, Ky., and established thereon a military reservation; that the owners of the tracts of land so purchased conveyed same to the United States, that the purchase of the land and the establishment of the military reservation were made with the consent of the state of Kentucky which was given by an act of the Legislature passed in the year 1892, which is now section 2376 of the Kentucky Statutes; and that the Union Bank of Stithton conducted its business in a building leased from and owned by the United States and situated on the lands purchased for the establishment of Fort Knox Military Reservation. All of the acts complained of in the indictment took

place within the boundaries of the Fort Knox Military Reservation and on the lands owned by the United States.

The commonwealth filed a demurrer to the plea to the jurisdiction. The trial court overruled the demurrer and sustained the appellee's plea to the jurisdiction of the court, and the commonwealth has appealed for a certification of the law.

Section 8 of article 1 of the Constitution of the United States, which defines the powers of Congress, provides that Congress shall have power "to exercise exclusive legislation in all cases whatsoever over such district (not exceeding ten miles square) as may, by cession of particular States and the acceptance of Congress, become the seat of the Government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." Section 2376 of the Kentucky Statutes, which is chapter 92 of the Acts of 1892, provides that "The Commonwealth of Kentucky hereby consents to the acquisition by the United States of America of all lands and appurtenances in this Commonwealth heretofore legally acquired, or that may be hereafter legally acquired, by purchase or condemnation, for the erection of forts, magazines, arsenals, dock yards and other needful buildings, including postoffices, custom houses and courthouses; also lands for locks, dams and canals in improving the navigation of the rivers and waters within and on the borders of the Commonwealth of Kentucky."

The question sharply presented is: Does section 8 of article 1 of the Federal Constitution give exclusive jurisdiction to the United States over offenses committed on the land owned by the United States and acquired by it for one or more of the enumerated purposes by the consent of the Legislature of the state in which the land is located? In the light of the construction uniformly given section 8 of article 1 of the Federal Consitution and the state statutes similar to our section 2376 by the Supreme Court of the United States and numerous state courts of last resort, the answer to the question must be "Yes."

It is the contention of the commonwealth that in enacting section 2376 of our Statutes it was not the purpose of the Legislature to cede jurisdiction, but merely to consent to the acquisition by the United States of the land for the purpose specified in the act. The consent to the acquisition of land within the state by the United States, given by section 2376, is without reservation. No right is reserved to the state.

When the Legislature of a state consents to the purchase of land by the United States, its consent may be accompanied by such reservations or conditions as it may see fit to impose, so long as they are not inconsistent with the free and effective use of the land for the public purposes intended. Fort Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 29 L. Ed. 264; Chicago, Rock Island & Pacific Railroad Co. v. McGlinn, 114 U. S. 542, 5 S. Ct. 1005, 29 L. Ed. 270; Benson v. United States, 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991; Palmer v. Barrett, 162 U. S. 399, 16 S. Ct. 837, 40 L. Ed. 1015; Arlington Hotel Co. v. Fant, 278 U. S. 439, 49 S. Ct. 227, 73 L. Ed. 447; United States v. Unzeuta, 281 U. S. 138, 50 S. Ct. 284, 286, 74 L. Ed. 761. But, in the absence of reservations in the consenting act, federal jurisdiction over land acquired by the United States by consent of the state is exclusive of state authority. One of the earliest expressions on the subject is found in Mr. Justice Story's opinion in United States v. Cornell, Fed. Cas. No. 14,867, 2 Mason, 60, in which it was held that a state consenting to the purchase by the United States of land for a fort was without jurisdiction of a public offense subsequently committed therein. In the course of the opinion it was said:

"The constitution of the United States declares that congress shall have power to exercise 'exclusive legislation' in all 'cases whatsoever' over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings. When therefore a purchase of land for any of these purposes is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within the exclusive legislation of congress, and the state jurisdiction is completely

ousted. This is the necessary result, for exclusive jurisdiction is the attendant upon exclusive legislation; and the consent of the state legislature is by the very terms of the constitution, by which all the states are bound, and to which all are parties, a virtual surrender and cession of its sovereignty over the place. Nor is there anything novel in this construction. It is under the like terms in the same clause of the constitution that exclusive jurisdiction is now exercised by congress in the District of Columbia; for if exclusive jurisdiction and exclusive legislation do not import the same thing, the states could not cede or the United States accept for the purposes enumerated in this clause, any exclusive jurisdiction.''

In the Cornell Case the crime was committed in Fort Adams in the state of Rhode Island on land owned by the United States. The Legislature of Rhode Island by an act passed in 1794 merely authorized any town or person in the state, by and with the consent of the Governor of the state, to sell and dispose of to the President, for the use of the United States, all such lands as should be deemed necessary to erect fortifications upon for the defense of the fort and harbor of Newport. The act of the Legislature reserved the right to execute on the lands so ceded all civil and criminal processes issued under the authority of the state. It was argued that the Rhode Island Legislature by the act of 1794 merely consented to the purchase of the land by the United States and that the sovereignty of the state over the land was not ceded. In answer to this argument, Mr. Justice Story said:

"The argument of the prisoner's counsel is, in the first place, that the act of Rhode Island contains no cession of jurisdiction in terms, and the consent of the legislature through the governor to the purchase is not a virtual cession of its sovereignty over the place. That argument has been sufficiently considered already, and stands repudiated by the express terms of the constitution.''

In Fort Leavenworth Railroad Co. v. Lowe, 114 U. S. 525, 5 S. Ct. 995, 999, 29 L. Ed. 264, the railroad company owned a railroad in the Fort Leavenworth Military Reservation in Kansas. Its property located on the reservation was assessed by the board of assessors

of the state and a tax levied thereon, which was paid under protest. It brought suit to recover back the money thus paid on the ground that the property, being entirely within the reservation, was exempt from assessment and taxation by the state. The Legislature of the state in 1875 ceded jurisdiction to the United States over the territory of the reservation but by a saving clause reserved the right to the state to tax railroad and other corporations, their franchises and property on the reservation. It was held that this condition annexed to the cession of jurisdiction was not inconsistent with the free and effective use of the fort as a military post. The land constituting the Fort Leavenworth Military Reservation was not purchased with the consent of the state Legislature, but was owned by the United States by cession from France many years before Kansas became a state. The court in its opinion pointed out the distinction between the jurisdiction of the United States over lands within a state purchased with the consent of the state Legislature and over lands otherwise acquired. With reference to lands acquired by the United States with the consent of the Legislatures of the states within which they are situated, the court said:

"When the title is acquired by purchase by consent of the legislatures of the states, the federal jurisdiction is exclusive of all state authority. This follows from the declaration of the constitution that congress shall have 'like authority' over such places as it has over the district which is the seat of government; that is, the power of 'exclusive legislation in all cases whatsoever.' Broader or clearer language could not be used to exclude all other authority than that of congress; and that no other authority can be exercised over them has been the uniform opinion of federal and state tribunals."

Probably the latest expression of opinion on the subject by the Supreme Court of the United States is found in Surplus Trading Co. v. Cook, 281 U. S. 647, 50 S. Ct. 455, 456, 74 L. Ed. 1091, in which it was held that land purchased by the United States for a military reservation, with the consent of the state in which it was located, came under the exclusive jurisdiction of the United States, and private personal property situated within the confines of the reservation could not be taxed by the state. The court said:

"As respects such a military reservation—that is, one which is neither excepted from the jurisdiction of the state at the time of her admission nor established upon lands purchased therefor with the consent of her Legislature—the state undoubtedly may cede her jurisdiction to the United States and may make the cession either absolute or qualified as to her may appear desirable, provided the qualification is consistent with the purposes for which the reservation is maintained and is accepted by the United States. And, where such a cession is made and accepted, it will be determinative of the jurisdiction of both the United States and the state within the reservation. But Camp Pike is not in the same class with any of the reservations of which we have spoken and should not be confused with any of them. Nor should it be confused with military or other reservations within a territory of the United States. It is not questioned, nor could it well be, that Camp Pike comes within the words 'forts, magazines, arsenals, dock-yards, and other needful buildings' in the constitutional provision. The land therefor was purchased by the United States with the consent of the Legislature of the state in 1917. The constitutional provision says that Congress shall have power to exercise 'exclusive legislation in all cases whatsoever' over a place so purchased for such a purpose. 'Exclusive legislation' is consistent only with exclusive jurisdiction. It can have no other meaning as to the seat of government, and what it means as to that it also means as to forts, magazines, arsenals, dockyards, etc. That no divided jurisdiction respecting the seat of government is intended is not only shown by the terms employed, but is a matter of public history. Why as to forts, magazines, arsenals, dockyards, etc., is the power given made to depend on purchase with the consent of the Legislature of the state if the jurisdiction of the United States is not to be exclusive and that of the state excluded?

"The question is not an open one. It long has been settled that, where lands for such a purpose are purchased by the United States with the consent of the state Legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, there-

by making the jurisdiction of the latter the sole jurisdiction."

Other cases of like import are Western Union Telegraph Co. v. Chiles, 214 U. S. 274, 29 S. Ct. 613, 53 L. Ed. 994; Battle v. United States, 209 U. S. 36, 28 S. Ct. 422, 52 L. Ed. 670; United States v. Wurtzbarger (D. C.) 276 F. 753; Webb v. J. G. White Engineering Corporation, 204 Ala. 429, 85 So. 729; Concessions Co. v. Morris, 109 Wash. 46, 186 P. 655; Commonwealth v. Clary, 8 Mass. 72; Foley v. Shriver, 81 Va. 568; Sinks v. Reese, 19 Ohio St. 306, 2 Am. Rep. 397; State v. Mack, 23 Nev. 359, 47 P. 763, 62 Am. St. Rep. 811; Willis v. Oscar Daniels Co., 200 Mich. 30, 166 N. W. 496, 500; Anderson v. Chicago & Northwestern R. R. Co., 102 Neb. 582, 168 N. W. 196, 197.

In United States v. Tucker (D. C.) 122 F. 518, 520, Tucker was indicted in the United States court for the Western district of Kentucky for murder committed in Ohio county at Lock No. 3 on Green river and on property owned by the United States. He demurred to the indictment on the ground that the federal court was without jurisdiction. The court overruled the demurrer, and in the course of its opinion said:

"Where there is a 'purchase' of property with the consent of the state legislature, exclusive jurisdiction follows and attaches by virtue of the constitutional provision itself, while in the case of express cession of jurisdiction to the United States by a legislative enactment for that purpose the jurisdiction of the United States over the place is derived from such legislative act, and not necessarily from the constitutional provision per se."

When the United States purchases land in a state with the consent of its Legislature for one of the purposes enumerated in article 1 of section 8 of the Federal Constitution, exclusive jurisdiction is acquired by the federal government, though cession of its jurisdiction by the state is not declared unequivocally, and the cases heretofore cited so hold.

The mere fact that the building in which the offense was committed had been leased by the United States to the Union Bank of Stithton and was not being used at the time for military purposes is not controlling on the question of jurisdiction.

In United States v. Unzeuta, supra, a murder was committed on a freight car on the right of way of the Chicago & Northwestern Railway Company on the Fort Robinson Military Reservation in Nebraska, and it was contended that the right of way was within the jurisdiction of the state of Nebraska, since it was not being used for military purposes. In rejecting this contention, the court said:

"While the grant of the right of way to the railroad company contemplated a permanent use, this does not alter the fact that the maintenance of the jurisdiction of the United States over the right of way, as being within the reservation, might be necessary in order to secure the benefits intended to be derived from the reservation."

In Arlington Hotel Co. v. Fant, supra, the jurisdiction of the United States was upheld as to the portion of the reservation there in question which had been leased for use as a hotel.

In Benson v. United States, supra, Benson was indicted in a federal court for murder committed in the Fort Leavenworth Military Reservation, and it was contended that the federal court was without jurisdiction since the murder was committed on a particular part of the reservation which was used solely for farming purposes. The objection to the jurisdiction was overruled.

We conclude that the Hardin circuit court is without jurisdiction, and that the trial court did not err in overruling the commonwealth's demurrer to the defendant's plea to the jurisdiction and in dismissing the indictment.

The foregoing is certified as the law.