HARDIN COUNTY BOARD OF SUPER-VISORS et al., Appellants,

v.

KENTUCKY LIMOUSINES et al., Appellees.

HARDIN COUNTY BOARD OF SUPER-VISORS et al., Appellants,

v.

POST CAB COMPANY, Inc., Appellee.

Court of Appeals of Kentucky.

June 22, 1956.

Rehearing Denied Sept. 21, 1956.

---

William S. Riley, Frankfort, Ordie Irwin, Elizabethtown, for appellants.

Rudy Yessin, Smith, Reed & Leary, Frankfort, for appellees.

STEWART, Judge.

Appellees, Kentucky Limousines, Inc., and Post Cab Company, Inc., own and operate passenger motor vehicles in and on the military reservation known as Fort Knox, located in Hardin County. As of January 1, 1953, the Hardin County tax commissioner assessed the vehicles belonging to these taxicab companies for ad valorem property taxes for that year. Protest was made by appellees to the Hardin County board of supervisors, which sustained the Hardin County tax commissioner's assessment. Appellees seasonably appealed to the Kentucky Tax Commission, which upheld the action of the Hardin County tax commissioner and the Hardin County board of supervisors. Appellees then appealed the action of the Kentucky Tax Commission to the Hardin Circuit Court. The circuit court set aside the assessment of the property, holding it to be null and void on the ground that the Legislature by an Act of 1904, 1904 Acts, Ch. 97, now KRS 3.030, relinquished all rights and jurisdiction of the Commonwealth over the

land comprising the Fort Knox military post, also called the "West Point site."

These two actions have been consolidated, since both involve the identical question of law. The only issue raised in this appeal is whether the Commonwealth in ceding to the United States the right to obtain land in Hardin County for the purpose of establishing the Fort Knox military installation surrendered all the rights and jurisdiction, including the power to tax any property thereon, that she possessed over the land and premises conveyed or to be conveyed for this purpose.

In 1904 the General Assembly enacted Chapter 97, Section 2376d–1 of the Kentucky Statutes, which read:

"That in the event of the establishment by the general government of a permanent camp of instruction and military post in the vicinity of West Point, Kentucky, commonly known as the West Point site, the state of Kentucky hereby relinquishes and cedes to the United States all of the rights and jurisdiction which she now possesses over the land and premises conveyed or to be conveyed to the United States for the purpose of such permanent camp of instruction and military post, *and exempt the said premises and all government property thereon from all taxes and assessments so long as the same shall remain the property of the United States.*" (Emphasis ours.)

The applicable statute is now known as KRS 3.030, and reads as follows:

"Kentucky cedes to the United States all the rights and jurisdiction which she now possesses over the land and premises in the vicinity of West Point, Kentucky, conveyed or to be conveyed to the United States for the purpose of establishing a permanent camp of instruction and military post, so long as the same shall remain the property of the United States."

Section 8 of Article 1 of the Constitution of the United States, which defines the powers of Congress, provides that Congress shall have power "To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings".

When the Legislature of a state consents to the purchase of land by the United States, its assent may be accompanied by such conditions as it may see fit to impose, so long as they are not inconsistent with the free and effective use of the land for the public purposes intended. Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091; United States v. Unzueta, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761; Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991. But, in the absence of reservations in the consenting act, federal jurisdiction over land acquired by the United States by the acquiescence of the state is exclusive of state authority.

In United States v. Cornell, 25 Fed.Cas. pp. 646, 648, No. 14,867, 2 Mason 60, one of the earliest cases on the subject under discussion, Mr. Justice Story described the result of an unqualified cession of land by a state to the United States in this language: "When therefore a purchase of land for any of these purposes [those enumerated in the above section of the Federal Constitution] is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within the exclusive legislation of congress, and the state jurisdiction is completely ousted. * * *"

The Act of 1904, set forth above, was construed in Commonwealth v. King, 252 Ky. 699, 68 S.W.2d 45, 48, decided in 1934. In that case Kentucky undertook to assert its sovereignty with reference to the Fort Knox military reservation by attempting to prosecute a bank officer who had made false entries at a bank which conducted its business in a building on the reservation leased from the United States. That case held that the consent to the acquisition of land within this state, given by the Act of 1904, was without any restriction, and that the Hardin Circuit Court was without jurisdiction to proceed against the bank officer under the criminal laws of the Commonwealth. Surplus Trading Co. v. Cook, supra, held that private property situated within the confines of a military area could not be taxed for state purposes, and the King case approved this statement from that opinion:

"'The question is not an open one. It long has been settled that, where lands for such a [military] purpose are purchased by the United States with the consent of the state Legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction.'"

See also Falls City Brewing Co. v. Reeves, D.C., 40 F.Supp. 35, which interpreted the Act of 1904.

The contention was made in Commonwealth v. King, supra, that the Commonwealth possessed jurisdiction to prosecute King on the ground that the United States had leased the building to a private concern, the Union Bank of Stithton, and that the building was not being used at the time for military purposes and was not subject to federal control. Regarding this point, this Court held: "The mere fact that the building in which the offense was committed had been leased by the United States to the Union Bank of Stithton and was not being used at the time for military purposes is not controlling on the question of jurisdiction."

Appellants contend the General Assembly is without authority to yield to the United States the right of the Commonwealth to tax private property on the Fort Knox reservation. It is insisted Section 175 of the Constitution of Kentucky prohibits the Legislature from abandoning this particular power. This section reads: "The power to tax property shall not be surrendered or suspended by any contract or grant to which the Commonwealth shall be a party."

There is nothing in our Constitution that prohibits the cession of land to the United States within the purview of Section 8 of Article 1 of the Federal Constitution. The United States could, if necessary, condemn land for any of the uses prescribed in this section. Section 175 simply means that Kentucky shall not renounce for any purpose its power to tax property located on land over which it still retains sovereignty.

The cases of Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 997, 29 L.Ed. 264, and James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, are relied upon as authority for the Commonwealth to exercise the power to tax private property situated within the Fort Knox area. In the first decision Kansas by Legislative enactment ceded to the United States the lands to establish the Fort Leavenworth military reservation and saved to that state "'the right to tax railroad, bridge, and other corporations, their franchises and property, on said reservation.'" In the second decision West Virginia passed an act whereby the United States could acquire land for use by the Federal Government, but the state there retained concurrent jurisdiction over the land ceded. In each case the Supreme Court of the United States upheld the right of the respective state to impose taxes on

certain property for the reason that such right had not been surrendered. The Kansas and West Virginia acts differ from the Kentucky enactment in that no saving clause is embraced in the latter.

We therefore conclude, as did the circuit court, that there is nothing in the act of cession involved here which reserved to the Commonwealth the right to tax private property located within the Fort Knox military area, and that Hardin County was without authority to assess and levy ad valorem taxes upon the property of appellees.

Wherefore, the judgment is affirmed.