**KINGWOOD OIL COMPANY, a Corporation, Appellant,**

v.

**HENDERSON COUNTY BOARD OF SUPERVISORS et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 22, 1963.

Rehearing Denied May 17, 1963.

Sandidge, Holbrook, Craig & Hager, John S. Hager, Owensboro, for appellant.

Carl D. Melton, Charles B. West, Henderson, William S. Riley, Paul D. Ross, Dept. of Revenue, Frankfort, for appellee.

CULLEN, Commissioner.

The Secretary of Interior of the United States executed a mineral lease to the Kingwood Oil Company covering oil and gas in a 700-acre tract of land within the boundaries of Camp Breckinridge Military Reservation. The tax commissioner of Henderson County, Kentucky, assessed the lessee's rights under the lease for state and county ad valorem taxes. A pursual of the statutory appeal procedures resulted ultimately in a judgment of the Henderson Circuit Court upholding the assessment. The oil company has appealed from that judgment to this Court.

The appellant's contention is that Kentucky ceded exclusive jurisdiction over the lands in Camp Breckinridge to the United States; that only Congress can make a recession of jurisdiction such as to permit the imposition of Kentucky ad valorem taxes on property within the boundaries of the camp; and that Congress has not made a recession. We think the contention is valid.

The land in the Camp Breckinridge Reservation was acquired by the United States in 1942, by condemnation. At the time of the acquisition KRS 3.010 expressed the blanket consent of Kentucky to the acquisition by the United States of lands acquired for forts, etc. (A subsequent 1954 amendment to KRS 3.010 stated that a consent should not be deemed to result in a cession of jurisdiction.) Relying on certain language from the opinion in Fort Leavenworth R. R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264, the appellees contend that the blanket consent expressed in KRS 3.010 was not sufficient to vest exclusive jurisdiction in the United States. However, in Commonwealth v. King, 252 Ky. 699, 63 S.W.2d 45, it was held on ample precedent that the blanket consent to acquisition operated as a complete cession of jurisdiction. We find no merit in the contentions that a blanket consent cannot be given and that exclusive jurisdiction cannot be obtained by the United States over land acquired by condemnation rather than by purchase.

Congress has not expressly receded jurisdiction to Kentucky to impose ad valorem taxes on property within the boundaries of Camp Breckinridge. The Mineral

Leasing Act of 1920, 30 U.S.C. § 181 et seq., does not apply to military lands, and even then it is not clear that the Act recedes jurisdiction to levy ad valorem taxes.

■ The lease here in question was executed pursuant to implied authority of the executive branch of the federal government to *protect* public lands. See Executive Order No. 9337, President F. D. Roosevelt, April 24, 1943; Public Land Order No. 729, June 19, 1951; 40 Op.Atty.Gen. 41–42. The appellees argue that the executive authority here has the same status as an Act of Congress and therefore may be operative to recede jurisdiction. However, the power to lease, even if considered to have legislative sanction, does not necessarily include the power to recede jurisdiction.

The Supreme Court has held that an unrestricted sale by the United States to a private person, of land over which it has exclusive jurisdiction, operates as a relinquishment of jurisdiction. S. R. A., Inc. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851. However, this was expressed as a rule of necessity, based on the proposition that sovereignty should end with the reason for its existence. We think there is sound reason for saying that if the United States conveys away a portion of the *territory* over which it has jurisdiction there can be no reason for the jurisdiction to continue over that portion. But the same is not true where the United States conveys some right less than the fee. In that case valid reasons may exist for a continued exercise of federal jurisdiction over the territory.

■ It must be remembered that the jurisdiction of the federal government over ceded land is *territorial* jurisdiction and embraces all activities, rights and transactions within the external boundaries of the land. S. R. A., Inc. v. Minnesota holds that if the government conveys away the *territory,* jurisdiction goes with it as a matter of necessity. But this is not authority for the proposition that if the government merely conveys some right that must be exercised within the boundaries of the federal

territory, jurisdiction over that *right* is receded.

■ Murphy Corporation v. Fontenot, 225 La. 379, 73 So.2d 180, on which the appellees rely, is not persuasive authority, because it was based on a provision of the Louisiana Cession Act that granted exclusive jurisdiction to the United States only so long as the property was used for military purposes. Fort Leavenworth R. R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264, upon which the Louisiana Court relied and which the appellees here also assert in support of their position, is not applicable here because the holding in that case was that where land is acquired by the United States *other than with unqualified consent of the state,* the exclusive jurisdiction of the United States continues only so long as the land is used for the purpose for which it was acquired. The same rule was announced in Surplus Trading Company v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091. But where, as here, the land is acquired with unqualified consent of the state, the federal jurisdiction continues so long as the government retains ownership, without regard to whether the land is used for governmental purposes.

It has been held that the jurisdiction of the federal government continues over buildings and other facilities on ceded land, even though leased to private persons for private use. See Commonwealth v. King, 252 Ky. 699, 68 S.W.2d 45. We see no distinction between leases of such things and leases of oil and gas rights, as concerns the effect of the lease on jurisdiction powers.

■ It is our conclusion that the authority of the Secretary of Interior to lease the oil and gas rights did not carry with it by implication any power to recede federal jurisdiction, and that the lease did not by any rule of necessity effect a recession of jurisdiction.

■ If the Secretary of Interior had no power to recede federal jurisdiction, then a specific provision in the lease purporting to

make the lease rights subject to state taxation could have no valid effect.

KRS 3.110 (enacted after the United States acquired Camp Breckinridge) stating that Kentucky consents to any retrocession by the United States of lands whenever the United States has ceased to exercise exclusive or special jurisdiction over the land, and that a conveyance of lands to private owners shall be deemed to constitute a retrocession of jurisdiction, could not operate to qualify an unlimited consent given for acquisition of land before its enactment. Nor do we conceive that the legislature of this state has power to determine what shall constitute a retrocession of jurisdiction by Congress, at least as to lands previously ceded.

It is argued that the lease in purporting to make the lease rights subject to state taxation followed an "established policy" of Congress. However, we do not find any satisfactory evidence of the existence of such a policy.

A further argument is that the Secretary of Interior had power to require payment of state taxes by the lessees, as a proper *condition* on which the lease would be executed. It might possibly be correct that the Secretary could require the lessee to pay a tax *equivalent* to the state and county governments as part of the consideration for the lease, but the Secretary clearly has no authority to vest in the state and county a taxing power which belongs exclusively to Congress.

It is our conclusion that since jurisdiction of the territory in which the lease rights have their situs has not been retroceded to Kentucky, and since Congress has not consented to the imposition of ad valorem taxes on property within the boundaries of federal enclaves, the lease rights are not subject to ad valorem taxes in Kentucky.

The judgment is reversed with directions to enter judgment in conformity with this opinion.