

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

July 24, 1967

Honorable Robert S. Calvert
Comptroller of Public Accounts
State of Texas
Austin, Texas

Opinion No. M-109

Re: Whether oil and gas produced
under an oil and gas lease
executed by the United States
to a private party lessee and
covering lands over which the
United States has exclusive
jurisdiction are subject to
the gas and oil production
taxes levied by Articles 3.01
and 4.02, respectively, Title
122A, Taxation-General, V.C.S.,
and the regulation pipeline tax
imposed by Article 6032, V.C.S.

Dear Mr. Calvert:

     You ask my opinion as to whether the oil and gas pro-
duced from land within the Federal enclave, commonly known
as the Corpus Christi, Texas, Naval Air Station, are subject
to the Texas gas and oil production taxes and the regulation
pipeline tax.

     The gross production taxes in question are imposed by
Articles 3.01 and 4.02, respectively, Title 122A, Taxation-
General, Vernon's Civil Statutes; the regulation pipeline tax
in question is imposed by Article 6032, Vernon's Civil Statutes.

     Our opinion is that the oil and gas produced, other
than the 16-2/3 per cent thereof which is payable as royalty
to the lessor, the United States, is subject to these taxes.

     The land in question was acquired by the United States
by condemnation pursuant to Articles 5242, 5247 and 5248,
Vernon's Civil Statutes, by judgment dated July 5, 1940, in

- 497 -

Honorable Robert S. Calvert, Page 2 (M-109)


the District Court of the United States for the Southern District
of Texas, Corpus Christi Division.  We assume the fee simple title
was acquired.

Subsequently, on December 12, 1940, pursuant to Articles
5242, 5247 and 5248, Vernon's Civil Statutes, the Governor of
Texas ceded to the United States exclusive jurisdiction over said
land for so long as the land should remain the property of the
United States, provided however that the State retained concurrent
jurisdiction for execution of all civil and criminal processes upon
any person upon said land.  The deed further provides that,

> "... The United States of America
> shall be secure in its possession and enjoy-
> ment of all said lands, and said lands and
> all improvements thereon shall be exempt
> from any taxation under the authority of
> the State of Texas, so long as the same
> are held, owned, used, and occupied by the
> United States of America for any of the
> purposes expressed in the foregoing statu-
> tes and not otherwise."  (Emphasis supplied.)

Jurisdiction over said land was formally accepted on behalf of
the United States.

Thereafter, on December 1, 1962, the United States of
America executed to Humble Oil & Refining Co. an oil and gas lease
covering the land under consideration.  The lessee has informed
us that all of the lands under consideration from which production
is had are on the mainland, that none of them are submerged lands
or tidelands.

The pertinent provisions of this lease are as follows:

1.

The form used is styled a "Protective Oil and
Gas Lease."

2.

The lease, at its inception, reads as follows:

"THIS LEASE, entered into . . . by and
between the United States of America, . . .

- 498 -

hereinafter called the lessor, and Humble
Oil and Refining Company, . . . hereinafter
called the lessee, . . .

"WITNESSETH:

"Sec. 1. Rights of lessee. In considera-
tion of rents and royalties to be paid, and the
conditions and covenants to be observed as herein
set forth, the lessor does hereby grant to the
lessee the exclusive right and privilege to drill
for, mine, extract, remove, and dispose of all the
oil and gas deposits owned by the lessor, except
helium gas, in or under the following described
land . . ."

3.

The term of the lease is stated as:

" . . . for a period of five years and so
long thereafter as oil or gas is produced in
paying quantities: . . ."

4.

The lease contains the further grant:

" . . . Except as otherwise provided and
subject to the conditions herein specified,
the lessee shall have the right to construct
and maintain upon the leased lands all works,
buildings, plants, waterways, roads, telegraph
or telephone lines, pipe lines, reservoirs,
tanks, pumping stations, or other structures
as may be necessary to the full enjoyment of
this lease."

5.

Section 2, styled "The lessee hereby agrees:"
contains the following relevant provisions:

"(d) Rentals and royalties. (1) To pay
annual rentals and royalties on production

under this lease as provided in Attachment
B which is made a part hereof."

Attachment B provides for a royalty of 16-2/3
per cent of the production to the lessor.

"(k)  Taxes and wages, freedom of purchase.
To pay when due, all taxes lawfully assessed
and levied under the laws of the State or the
United States upon improvements, oil, and gas
produced from the lands hereunder or other
rights, property, or assets of the Lessee;
. . ."

Articles 3.01 and 4.02 impose an occupation tax on the
business of producing gas and oil, respectively, within this
State.  Article 6032, commonly known as the Regulation Pipeline
Tax, imposes a tax upon each barrel of crude petroleum produced
within this State ". . . which shall be in addition to and col-
lected in the same manner as the present gross receipts produc-
tion tax on crude petroleum. . . ."  These taxes are occupation
taxes.  Group No. 1 Oil Corporation v. Sheppard, 89 S.W.2d 1021
(Tex.Civ.App. 1935, error ref.); State v. Humphrey, 159 S.W.2d
162 (Tex.Civ.App. 1942).

The oil and gas lease conveyed to Humble, the lessee,
a present determinable fee estate in all of the oil and gas
(except helium gas) in and under the lands covered by it.  The
above quoted provisions of the lease, and its other relevant
provisions, are analogous in law to the provisions of the oil
and gas lease considered in Stephens County v. Mid-Kansas Oil
& Gas Co., 113 Tex. 160, 254 S.W. 290 (1923), 29 A.L.R. 566.
This case and the unbroken line of the subsequent decisions of
our Texas courts following it are unequivocal to the effect that
this type of oil and gas lease is a present sale or conveyance
of real property and operates to transfer the oil and gas in
place in the premises described therein and to sever those minerals
from the surface.  42 Tex.Jur.2d 368, Oil and Gas, Sec. 175, and
the pages and sections following and particularly the cases cited
at page 369, note 1.

Decisions of our State Supreme Court have established that
an interest in minerals in place and an interest in royalty are
separate and distinct estates in land.  Pich v. Lankford, 157 Tex.
335, 302 S.W.2d 645 (1957).

Under both the relevant constitutional provisions and the three tax statutes under consideration the royalty payable to the United States is exempt from the taxes under consideration. Group No. 1 Oil Corporation v. Sheppard, supra; Theison v. Robison, 117 Tex. 489, 8 S.W.2d 646 (1928); Group No. 1 Oil Corporation v. Bass, 283 U.S. 279 (1931).

It is the conclusion of this office that the oil and gas produced which is allocable to the lessee is subject to the taxes under consideration. Under the cession deed by the State of Texas, the lands remained tax exempt only "so long as the same are held, owned, used, and occupied by the United States of America." It is clear from the lease by the Federal government to Humble, the mineral lands are not in legal contemplation of law either "held" or "owned" or "used" or "occupied" by the government, whose only interest is in the royalty aforesaid. When the mineral lands are no longer used for a federal purpose or there has been an occurrence of the circumstances specified in the state cession, exclusive jurisdiction is terminated.

In S.R.A. Inc. v. Minnesota, 327 U.S. 558 (1946), the Supreme Court held that when a purchaser entered into possession of real estate under its contract of purchase of the fee title that the property became subject to the territorial jurisdiction of the state wherein it was located and was subject to a direct tax by the state on the realty. Under the contract of sale, legal title was retained in the United States until payment of the balance of the purchase price in installments. The contract contained no express provision retaining sovereignty in the United States; there was no express retrocession by Congress to the state; and the original act of cession of sovereignty over the property to the United States contained no requirement for return of sovereignty to the state when the property was no longer used for federal purposes. This case cites and follows New Brunswick v. United States, 276 U.S. 547 (1928). In both cases, the Court held that the equity situation was one wherein the United States had conveyed title to the purchasers, as owners, and they had mortgaged the real estate to the United States to secure the unpaid purchase money.

Two other cases by the Supreme Court of the United States have directly held that the estates granted by oil and gas leases were subject to taxation by the states. The first, Oklahoma Tax Commission v. Texas Company, 336 U.S. 342 (1949), considered whether a lessee of mineral rights in certain Indian lands in the

State of Oklahoma was subject to the payment of nondiscriminatory state gross production taxes and state excise taxes on petroleum produced from such lands. The excise tax was very similar to the Texas gross production taxes under consideration. It was at the rate of one mill per barrel on every barrel of petroleum produced in Oklahoma. The Oklahoma Supreme Court construed it as an excise tax on the production of oil. The Court held that under Oklahoma law the lessees became the owners of all the right, title and interest in the minerals in their leases, subject only to the royalty interest reserved to the Indian lessors and that they were liable for the taxes. The Court said:

> ". . . it is well established that proper-
> ty purchased by a private person from the
> Federal Government becomes a part of the gener-
> al mass of property in the state and must bear
> its fair share of the expenses of local govern-
> ment. . . ." (at page 353).

In the second case, Group No. 1 Oil Corporation v. Bass, supra, the Court had under consideration oil and gas leases granted by the State of Texas to a private corporation for a term of years, with the right to enter on the lands of the state public domain for the purpose of drilling and operating for oil and gas and to erect and maintain all necessary structures for the production, transportation and storage of these products, and which required the lessee or owner of these rights conveyed to pay the State the value of a certain percentage of the oil and gas produced and sold. The Supreme Court recognized and followed the construction of the Texas Supreme Court to the effect that such leases had effected present sales to the lessee of the oil and gas in place. The Court held:

> "This Court has consistently held that
> where property or any interest in it has
> completely passed from the government to
> the purchaser, he can claim no immunity from
> taxation with respect to it, merely because
> it was once government-owned or because the
> sale of it effected some government purpose.
> New Brunswick v. United States, supra; Forbes
> v. Gracey, supra; Tucker v. Ferguson, supra;
> see Gromer v. Standard Dredging Co., 224 U.S.
> 362, 371; Choctaw, O. & G. R. Co. v. Mackey,
> 256 U.S. 531, 537; Central Pacific R. Co. v.
> California, 162 U.S. 91, 125; Railroad Co.
> v. Peniston, 18 Wall. 5, 35-37; Weston v.
> Charleston, supra. p. 468.

> "Property which has thus passed
> from either the national or a state
> government to private ownership becomes
> a part of the common mass of property
> and subject to its common burdens.
> Denial to either government of the
> power to tax it, or income derived
> from it, in order to insure some remote
> and indirect antecedent benefit to the
> other, would be an encroachment of the
> sovereign power to tax, not justified
> by the implied constitutional restric-
> tion. See Weston v. Charleston, supra,
> p. 468. The interest which passed to
> petitioner here, as defined by the laws
> of the State, is not distinguishable
> from the mining claims, acquired in
> lands of the United States under its
> statutes, which, together with minerals
> and ores derived from them, were held
> subject to state taxation in Forbes v.
> Gracey, supra." (at pages 282-283)

Humble, as lessee, has accepted from the Federal govern-
ment the conveyance of a present determinable fee in the oil and
gas and mineral estate in the lands. Under the foregoing cases,
the sovereign power of the State of Texas to impose the taxes
under consideration seems to be established.

The case of Oklahoma Tax Commission v. Texas Company,
supra, is conclusive against any immunity of the lessee. In
that case, the Court said,

> ". . . The taxes here are nondis-
> criminatory. The respondents are 'private
> persons' who seek immunity 'for their prop-
> erty or gains because they are engaged in
> operations under a government contract or
> lease.' The functions they perform in
> operating the leases are hardly more govern-
> mental in character than those performed
> by lessees of school lands or, indeed, by
> many contractors with the Government. . . ."
> (at page 363)

- 503 -

"
. . . .

". . . But, so far as concerns private
persons claiming immunity for their ordinary
business operations (even though in connec-
tion with governmental activities), no implied
constitutional immunity can rest on the merely
hypothetical interferences with governmental
functions here asserted to sustain exemption.
. . ." (at page 365)

It is also pertinent that the Court could find no statutory
immunity to imposition of the taxes.

We are aware of that line of decisions represented by
the case of Humble Pipeline Co. v. Waggoner, 376 U.S. 369 (1964),
which would deny imposition of the taxes because of the continu-
ing exclusive jurisdiction of the United States over the lands
covered by this oil and gas lease. This last mentioned case con-
sidered an oil and gas lease on lands in Louisiana. It denied
authority to the State of Louisiana to levy ad valorem taxes upon
pipelines and other personal property equipment used by a private
person who was lessee under an oil and gas lease covering lands
on which Barksdale Air Force Base was located and on which lands
the State of Louisiana had ceded to the United States exclusive
jurisdiction, except for right to execute certain civil and crimi-
nal processes. The deed to the United States was for a fee simple
estate in the lands. This case and our holding in this opinion
are distinguished on the basis of the nature of the estate granted
to a mineral lessee under an oil and gas lease in Louisiana and in
Texas.

In Louisiana, a mineral lease is held to be merely a con-
tract which permits the lessee to explore for minerals on the
land of the lessor in consideration of the payment of a rental
and/or bonuses. It is well settled that it is not in essence a
real right; it does not create substantive real rights in the land
leased. Tinsley v. Seismic Explorations, Inc., 117 So.2d 897 (La.
Sup. 1960); see also Summers, Oil and Gas, Permanent Edition, Vol.
1A, p. 470-485, sec. 167, also at pages 209-303, sec. 132-136.

The distinction between the cases relied upon to support
our opinion and the case of Humble Pipeline Co. v. Waggoner, supra,
is well stated in Kingwood Oil Company v. Henderson County Board
of Supervisors, 367 S.W.2d 129 (Ky. Ct. of App. -- Court of last

resort -- 1963), wherein the Court in considering S.R.A., Inc.
v. Minnesota, supra, said:

> "We think there is sound reason for saying
> that if the United States conveys away a por-
> tion of the territory over which it has juris-
> diction there can be no reason for the juris-
> diction to continue over that portion. But
> the same is not true where the United States
> conveys some right less than a fee. In that
> case valid reason may exist for a continued
> exercise of federal jurisdiction over the
> territory." (Emphasis by the court.) (at p.
> 132)

In that case, the mineral lease under the law of Kentucky is
held not to convey the equivalent of a fee to the minerals with a
complete severance as in Texas. See 1A, Summers, Oil and Gas, 410,
Sec. 160. The distinction above drawn seems to be the basis on
which the United States Supreme Court distinguished its holding
in S.R.A., Incl v. Minnesota, supra, and its holding in Humble
Pipeline Co. v. Waggoner, supra, made in the latter case at pages
372 and 373, wherein the court distinguished between a sale of
land over which the United States had exclusive jurisdiction and
the lease of that property for commercial purposes, or for farm-
ing, or for the conveyance of a mere right of way.

The recent case of Adams v. Calvert, 396 S.W.2d 948 (Tex.
Sup. 1965) is also distinguishable in that the government had in
no way terminated its jurisdiction over the real estate, and under
the terms of the cession deed by the State, the State remained
powerless to impose the taxes there involved.

## S U M M A R Y

> The oil and gas lease executed by the United
> States covering lands over which it had exclus-
> ive jurisdiction, except for the right of Texas
> to execute civil and criminal process, to a pri-
> vate party lessee, subjected the oil and gas
> produced, other than the royalty payable to the
> United States as lessor, to the oil and gas pro-
> duction taxes imposed by Articles 3.01 and 4.02,

respectively, Title 122A, Taxation-General, Vernon's Civil Statutes, and the regulation pipeline tax imposed by Article 6032 of said statutes.

The royalty interest payable to the United States is exempt from these taxes.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by W. E. Allen
Assistant Attorney General

APPROVED:

OPINION COMMITTEE
Hawthorne Phillips, Chairman
Kerns B. Taylor, Co-chairman
Houghton Brownlee
Linward Shivers
Jack Goodman
Lewis Berry

STAFF LEGAL ASSISTANT
A. J. Carubbi, Jr.